**STATE of Tennessee, Appellee,**

v.

**Earl RAINES, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 7, 1994.

Permission to Appeal Denied by Supreme Court July 5, 1994.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, James N. Ramsey, Dist. Atty. Gen., Janice G. Hicks, Asst. Dist. Atty. Gen., Clinton, for appellee.

J. Thomas Marshall, Jr., Office of the Public Defender, Clinton, for appellant.

## OPINION

JONES, Judge.

The appellant, Earl Raines, was convicted of murder in the second degree, a Class A felony, by a jury of his peers. The trial court, finding the appellant to be a standard offender, imposed a Range I sentence of

twenty-five (25) years confinement in the Department of Correction.

Seven issues are presented for review. The appellant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he is guilty of murder in the second degree beyond a reasonable doubt. He further contends that the trial court committed error of prejudicial dimensions in (a) charging the jury that it must find him not guilty of the greater offense before considering the next lesser included offense, (b) refusing to set aside the jury verdict because it was against the weight of the evidence, and (c) failing to fully define the term "knowing" in the instructions given to the jury. He also contends that the trial court committed error of prejudicial dimensions when applying the enhancement factors when sentencing him, failing to consider the applicable mitigating factors, and imposing a sentence that is too harsh.

The judgment of the trial court is affirmed as modified.

The appellant and the victim, Wilma Jean Raines, were married for several years. However, this union was dissolved by divorce. Although, the divorce decree was entered on April 8, 1991, the appellant continued to live in the victim's residence.

The victim's insistence that the appellant move from her residence resulted in numerous arguments between the appellant and the victim. The victim told the appellant that he had to move from the residence by May 3, 1991. He did not move. She then told the appellant that if he did not move on or before May 11, 1991, she would take legal action to have him evicted.

On May 8, 1991, the appellant went on a rampage. He told one of the victim's sisters that he was going to kill his mother-in-law and his wife. He told the victim in the presence of their daughter that "he was going to blow her brains out." He made his mother-in-law leave the residence. She testified that the appellant told her "there was going to be some hell raised all night if [she] didn't get the hell out of there and get back to the home where [she] belonged." He was holding a shotgun in his hands as she left the residence.

The appellant went next door and attempted to engage one of the victim's sisters in a fight. She ignored him. However, when he called her grandchild vile names, the mother of the child attacked him. He pushed her away. Later, he took steps to cut the power off. The appellant's daughter went to the home of a relative to avoid a confrontation with him.

During the early morning hours of May 9, 1991, the appellant shot the victim in the head with a shotgun. He went next door and told his mother-in-law and a sister-in-law: "I shot her." He later told the sister-in-law it was his fault.

An investigation revealed two spent .12 gauge shotgun shells in the living room area and a live round in the kitchen. The shotgun was also recovered. An autopsy revealed that there was a massive distortion of the face and head caused by an obvious shotgun wound. The pellets entered in "front of the left ear ... and blew the right side of the head out, just totally wiped out the head, crumbled the bones, skin flaps out and brain disrupted." The cause of death was "brain disruption from a shotgun wound to the left temple area of the head."

The appellant told the ambulance attendants in the presence of law enforcement officers that he and the victim had struggled over the shotgun and the victim was accidentally shot during the scuffle. Later, he told a deputy sheriff:

[H]e had been drinking and that he got in an argument with his ... sister-in-law, ... Norma Smith, earlier that day over an automobile. And sometime later on in the night, the victim had woke him up to see if he was going to bed.... [He] told her "yeah, I'm going to get my damn gun and shoot the windows out of the car." And he said that he went and got his gun, come back into the living room ... a struggle ensued between him and the victim. And he stated that they were ... pushing and pulling at each other, and they just fell apart and the gun went off striking the victim.

Although the appellant stated he had consumed four or five quarts of beer before the struggle occurred, he pointed out that he could drink a case of beer and not be drunk. He specifically stated that he was not drunk when the shooting occurred. There is no indication in the record over what period of time he consumed the beer.

A test firing of the murder weapon revealed that the barrel of the shotgun was approximately four feet from the victim when it was fired. Furthermore, the drift pattern of the shot that killed the victim was between 2° and 3°, indicating essentially a level, horizontal shot straight through the head.

## I.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod*, 754 S.W.2d 627, 632 (Tenn.Crim.App.1988).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn.Crim.App.1987). In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), the Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

A criminal offense may be established exclusively by circumstantial evidence. *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. . . ." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, 225 Tenn. at 484, 470 S.W.2d at 613.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *Grace*, 493 S.W.2d at 476, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *State v. Matthews*, 805 S.W.2d at 780.

In this case, the appellant has failed to illustrate why the evidence was not sufficient to support the verdict of the jury. Moreover, this Court concludes that there is sufficient direct and circumstantial evidence contained in the record to support a finding by a rational trier of fact that the appellant was guilty of murder in the second degree beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## II.

The appellant also contends that the trial court committed error of prejudicial dimensions because the court did not, as the thirteenth juror, grant him a new trial. He predicates his argument on Rule 33(f), Tenn. R.Crim.P. This rule provides:

**(f) New Trial Where Verdict Is Against the Weight of the Evidence.** The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence. If the trial court grants a new trial because the verdict is contrary to the weight of the evidence, upon request of either party the new trial shall be conducted by a different judge.

He argues: "[T]he facts do not support a finding beyond a reasonable doubt of a 'knowing killing.' The clear weight of the evidence shows only criminally negligent homicide or an accidental death for which Earl Raines would not be criminally liable. Mr. Raines should receive a new trial."

The trial court was satisfied with the verdict of the jury. During the sentencing hearing, the trial court stated:

Now, my opinion, Mr. Marshall, the jury had sufficient evidence before them to have found a premeditation to take a life in this case. You have done an excellent job in my opinion in having this charge by a jury to be found a second-degree murder as opposed to a first-degree murder. There are strong, extremely strong circumstances where a person—he intended to take a life. He blew this woman's head almost essentially off, right through the temple.

When ruling on the motion for a new trial, the trial court said: "Well, the Court is of this opinion as it relates to the second-degree murder finding by the jury, that certainly there was ample proof. And I will not grant a new trial on that basis."

The trial court saw and heard the witnesses testify in this case. It also heard the evidence adduced by the parties during the course of the trial. While this Court cannot address the credibility of the witnesses or their demeanor and conduct while on the witness stand, this Court can address whether there is sufficient evidence to support the jury's verdict that the appellant was guilty of murder in the second degree. As previously noted, the evidence is clearly sufficient to support the verdict of the jury. Consequently, the trial court's decision to deny the relief sought by the appellant was supported by the evidence.

## III.

The appellant contends that the trial court committed error of prejudicial dimensions in instructing the jury concerning the order in which it was to consider each offense. The trial court charged the jury:

As stated, the defendant is charged with first-degree murder. There are other lesser included offenses in the charge of first-degree murder which are presented for your consideration. You will investigate the offenses in the following order: (1) first-degree murder, (2) second-degree murder, (3) voluntary manslaughter, and (4) criminally negligent homicide.

The jury must first consider the charge of first-degree murder. If the jury finds that the State has proven beyond a reasonable doubt the elements of first-degree murder to your satisfaction, then you will report that your verdict is guilty and you will go no further in your investigation.

However, if you should find the defendant not guilty of first-degree murder, you will go further and consider the guilt or innocence of the defendant of the crime of second-degree murder. The jury will consider the lesser included offenses only if you find the defendant not guilty of the greater offense.

Remember that you cannot find the defendant guilty of more than one offense herein defined....

Similar language was read to the jury following the instructions on murder in the second degree and voluntary manslaughter.

Counsel for the appellant raised this issue in *State v. Jeffrey Darrell Rutherford*, 876 S.W.2d 118 (Tenn.Crim.App.1993), *per. app. denied*, February 14, 1994. A panel of this Court found that the instructions given by

the trial court were proper. In ruling, this Court said:

> The defendant claims that the "sequential" charge given to the jury was error. The defendant contends that the instruction prevented the jury from fulfilling its duty of determining the degree of homicide shown by the evidence. *Wilson v. State,* 574 S.W.2d 52, 55 (Tenn.Crim.App.1978). He also claims the instruction violates T.C.A. § 40–18–110.
>
> The jury does have a duty to determine the grade of the offense, but the "sequential" instruction given to the jury was not violative of this duty under Tennessee law. The judge instructed the jury on all of the lesser offenses included in the charge of first degree murder as required by statute. *See* T.C.A. § 40–18–110. The sequential jury instruction did not preclude the jury from considering the lesser charges. This is evident from the jury's finding of guilt of second degree murder rather than first degree murder.

876 S.W.2d at 119–20.

This issue is clearly without merit.

## IV.

The appellant contends that the trial court committed error of prejudicial dimensions in failing to define the term "knowing" in the charge given to the jury. The appellant argues that "[t]here is ambiguity in what constitutes a 'knowing killing.'" The term "knowing" was used by the trial court in defining the offenses of murder in the second degree and voluntary manslaughter.

The instruction given as to murder in the second degree is as follows:

> Any person who commits second-degree murder is guilty of a felony. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) That the defendant unlawfully killed the alleged victim; and
>
> (2) The killing was *knowing.*
>
> The requirement of *knowing* is also established if it is shown that the defendant acted intentionally. Intentionally means that the person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Knowingly* means that the person acts *knowingly* with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist.
>
> A person that acts *knowingly,* with respect to the resolve of the person's conduct, when the person is aware that the conduct is reasonably certain to cause the result (emphasis added).

The applicable provisions were repeated when the trial court charged on the offense of voluntary manslaughter.

■ It is a well-established principle of law that an accused in a criminal proceeding is "entitled to a clear and distinct exposition of the law of his case as applicable to the facts." *Strady v. State,* 45 Tenn. 300, 307 (1868). *See Potter v. State,* 85 Tenn. 88, 98, 1 S.W. 614, 618 (1886); *Crawford v. State,* 44 Tenn. 190, 194–195 (1867); *State v. McAfee,* 737 S.W.2d 304, 308 (Tenn.Crim.App.1987). Nothing short of this will "satisfy the demands of justice," *Crawford,* 44 Tenn. at 195, or an accused's constitutional right of trial by jury. *State v. Staggs,* 554 S.W.2d 620, 626 (Tenn.1977); *Strader v. State,* 210 Tenn. 669, 682–683, 362 S.W.2d 224, 230 (1962).

■ It is the duty of the trial court, without request, to give the jury proper instructions as to the law governing the issues raised by the nature of the proceedings and the evidence introduced during the course of the trial. *State v. Martin,* 702 S.W.2d 560, 564 n. 5 (Tenn.1985); *Poe v. State,* 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963); *McAfee, supra.* Simply reading a statute to the jury, when the statute is ambiguous and open to more than one interpretation, does not satisfy "the demands of justice" or the accused's constitutional right of trial by jury. In *Poole v. State,* 61 Tenn. 288, 294 (1872), the Supreme Court held that when a word or phrase contained in a statute has "a technical meaning, ... it is the duty of the Court ...

to give such meaning to the jury in the charge, and not merely to use the language" because "[t]he jury is not presumed to understand [the word or phrase] any more than it is to understand any other technical term." Conversely, when words and terms are in common use and can be understood by people of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain the terms. *See State v. Groseclose*, 615 S.W.2d 142, 147–148 (Tenn.), *cert. denied*, 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193 (1981) ("mitigating"); *State v. Black*, 745 S.W.2d 302, 306 (Tenn. Crim.App.1987) (the words "open" and "openly" contained in the statute proscribing rebellion with intent to kill or escape); *State v. Rollins*, 605 S.W.2d 828, 831–832 (Tenn. Crim.App.1980) ("kidnapping"); *Robinson v. State*, 513 S.W.2d 156, 157–158 (Tenn.Crim. App.1974) ("aiding and abetting").

Counsel for the appellant also raised this issue in the case of *State v. Jeffrey Darrell Rutherford, supra, per. app. denied*, February 14, 1994. A panel of this Court found this issue to be without merit.

In the recent case of *State v. Braden*, 867 S.W.2d 750 (Tenn.Crim.App.1993), a prosecution for vehicular homicide and aggravated assault, the accused submitted special requests containing definitions of the terms "knowing" and "willfully". This Court held that the trial court was not required to give either instruction because the charge adequately covered the meaning of these words, and, further, these words were in common use and could be understood by persons of ordinary intelligence.

■ This Court is of the opinion that the term "knowing" is a term that is commonly used by the general population of this State; and, further, it can be understood by persons of ordinary intelligence. Thus, the trial court was not required to include an instruction defining the term "knowing" in the charge. The explanation of the term contained in the charge was sufficient.

This issue is without merit.

## V.

The appellant challenges the length of the sentence imposed by the trial court. He contends that the trial court erroneously applied the aggravating factors, failed to consider and apply certain mitigating factors, and that the length of the sentence is "too harsh."

## A.

■ When an accused challenges the length of his sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). However, there are exceptions to this requirement. First, the requirement that this Court presume the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). Second, the presumption does not extend to the legal conclusions reached by the trial court in sentencing the accused. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts.

In conducting a *de novo* review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offenses, and (f) the appellant's potential or lack of potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–103, –210.

■ The trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of the witnesses. Therefore, this Court gives great weight to the determinations made by the trial court concerning the credibility of the witnesses; and this Court will not interfere with the trial court's findings of fact in this regard unless the evidence contained in the record clearly preponderates against these findings. There are also ex-

ceptions to this rule. This Court will not give such deference to the trial court's findings when evidence is stipulated or is in the form of a deposition, a statement contained in the presentence report, or a record introduced into evidence. In these instances the trial court does not observe the manner and demeanor of the witnesses.

 The accused, as the appellant and aggrieved party, has the burden of establishing that the sentence imposed by the trial court was erroneous. *See* Sentencing Commission Comments to Tenn.Code Ann. § 40–35–401(d); *State v. Ashby,* 823 S.W.2d at 169; *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn. Crim.App.1991).

### B.

The trial court found three aggravating factors. First, the offense involved more than one victim. Tenn.Code Ann. § 40–35–114(3). Second, the trial court found that the victim of the crime was particularly vulnerable because of her weight and height. Tenn. Code Ann. § 40–35–114(4). Third, the trial court found that the appellant employed a firearm to commit the offense. Tenn.Code Ann. § 40–35–114(9). The trial court found that there were no mitigating factors present.

The appellant argues that there was only one victim, Wilma Jean Raines, the person that he murdered. The trial court concluded that the daughter of the couple was also a victim because she lost her mother and her father was required to serve a prison sentence for killing her mother. Thus, the question this Court must decide is: what is the meaning of the term "victim" as it is used in Tenn.Code Ann. § 40–35–114(3). This statute states: "If appropriate for the offense, enhancement factors, if not themselves essential elements of the offense as charged in the indictment, may include: (3) The offense involved more than one (1) victim." This Court cannot find where this term has previously been defined by an appellate court of this state.

The word "victim" is defined as a person who has been harmed or damaged by others. *Black's Law Dictionary* 1405 (5th ed. 1979) defines the word "victim" as: "The person who is the object of a crime or tort, as the victim of a robbery is the person robbed." *Webster's II New Riverside University Dictionary* 1286 (1984) defines the term "victim" in the following manner:

1. One harmed or killed by another. 2. A living creature slain and offered to a deity as a sacrifice or as part of a religious rite. 3. One harmed by or made to suffer from an act, circumstance, agency, or condition: victims of disaster. 4. One who suffers injury, loss, or death because of a voluntary undertaking: victims of their own conniving. 5. One tricked, swindled, or taken advantage of: the victim of a con game.

 This Court is of the opinion that the word "victim," as used in Tenn.Code Ann. § 40–35–114(3), is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime.[1] The term does not include a person who has lost a loved one or a means of support because the perpetrator of the crime killed a relative. Moreover, giving the term a generic meaning would deprecate this factor and render it meaningless. Every time a person is murdered, a spouse, child, parent, sibling or collateral relative loses a loved one. Thus, this enhancement factor would be applied by operation of law; and, if a serious injury was inflicted, the same would be true. Also, the taking or destruction of personal property, where it has affected the economic well-being of a family or a relative, would result in the automatic enhancement of a sentence based on this factor.

 The record in this case does not support the finding of the trial court that the victim was particularly vulnerable because of her physical stature. Thus, the state failed to carry its burden of establishing this enhancement factor. *See State v. Adams,* 864 S.W.2d 31, 35 (Tenn.1993).

---

1. This definition is supported by the definition of the word "victim" contained in the Criminal Injuries Compensation Act of 1976. *See* Tenn. Code Ann. § 29–13–102(11).

The state did not introduce any evidence to establish the victim's vulnerability. The only evidence contained in the record is the report of the pathologist. This established that the victim was five feet, three inches tall and weighed between 130 and 140 pounds. The trial judge, noting that he had seen the victim in the past, described her as being "extremely frail and extremely small." He also said she was "extremely thin and not tall in stature." Of course, these facts are not contained in the record. In addition, it appears that the trial judge was recalling the weight and stature of a victim in another case factually similar to this case.

The Tennessee Criminal Sentencing Reform Act of 1989 provides that the rules of evidence apply at sentencing hearings, subject to a few exceptions. Tenn.Code Ann. § 40–35–209(b). In addition, the Act provides that "[a] sentence must be based on evidence in the record of the trial, the sentencing hearing, the presentence report, and, the record of prior felony convictions filed by the district attorney general with the court...." Tenn.Code Ann. § 40–35–210(g). In this case, both statutory mandates were violated by the trial court in concluding that this enhancement factor was present. The trial judge was not permitted to predicate his finding upon what he may or may not have seen at some undetermined point in the past. This violated the rules of evidence because he could not take judicial notice of this fact. Moreover, these facts were not introduced into evidence, and, therefore, were not a part of the record in this case. The purpose of the latter mandate is to permit this Court to conduct a *de novo* review of the sentence. If

the rule was otherwise, this Court's *de novo* review would be an effort in futility; and, additionally, it would be meaningless to the parties.

■■■ The trial court properly enhanced the appellant's sentence because he employed a firearm to kill the victim. Contrary to the appellant's argument, the use of a firearm is not an element of murder in the second degree,[2] and, if the accused commits murder in the second degree by shooting the victim with a firearm, this sentencing factor can be used to enhance the accused's sentence.[3]

### C.

The appellant also contends that there are three mitigating factors which are supported by the record. First, the defendant was suffering from a mental condition that significantly reduced his culpability for the offense. Tenn.Code Ann. § 40–35–113(8). Second, The defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. Tenn.Code Ann. § 40–35–113(11). Third, the defendant had no significant criminal record. Tenn.Code Ann. § 40–35–113(13).

■■■ The first mitigating factor, i.e., the appellant was suffering from a mental or physical condition that significantly reduced his culpability for the offense, was not available to the appellant. First, this factor specifically states that "the voluntary use of intoxicants does not fall within the purview of this factor." Tenn.Code Ann. § 40–35–113(8). If the appellant was intoxicated as

**2.** *State v. Shelton,* 854 S.W.2d 116, 123 (Tenn. Crim.App.1992); *State v. Reedar Junior Robbins,* Hardin County No. 6, slip op. at 3–4, 1991 WL 40531 (Tenn.Crim.App., Jackson, March 27, 1991), *per. app. denied,* August 5, 1991.

**3.** *See State v. Peat,* 790 S.W.2d 547, 551 (Tenn. Crim.App.1990) (murder second degree); *State v. Witherspoon,* 769 S.W.2d 880, 884 (Tenn.Crim. App.1988) (assault with intent to commit murder first degree).

There are several unreported cases where the use of a firearm was used to enhance a sentence when the accused was convicted of murder second degree. *See, e.g., State v. Junior Belcher,* Hamblen County No. 03–C–01–9110–CR–00352,

slip op. at 3, 1992 WL 70936 (Tenn.Crim.App., Knoxville, April 10, 1992); *State v. Christopher Coffee,* Davidson County No. 01–C–01–9103–CR–00066, slip op. at 4, 1991 WL 201634 (Tenn. Crim.App., Nashville, October 10, 1991); *State v. James K. Boykin, Jr.,* Overton County No. 01–C–01–9106–CC–00174, slip op. at 3, 1991 WL 194150 (Tenn.Crim.App., Nashville, October 2, 1991); *State v. Reedar Junior Robbins, supra.* In *State v. Jerry E. Cook,* Monroe County No. 117, 1989 WL 91604 (Tenn.Crim.App., Knoxville, August 16, 1989), *per. app. denied,* November 6, 1989, a conviction for murder second degree, the use of a butcher knife to kill the victim was used to enhance the sentence. Slip op. at 2.

he now claims, it was voluntarily induced. Second, the appellant emphatically denied being drunk when he killed the victim, albeit he also stated that he had consumed a quantity of beer earlier. Third, if the appellant was intoxicated, it was incidental to his intention to kill the victim given the number of times he threatened to kill the victim shortly before the murder. Fourth, it is obvious from a reading of the record that the trial court did not believe the appellant as a witness. The expert testimony given in this case was predicated upon what the appellant told the witness approximately two months after he killed the victim. The expert candidly admitted that the appellant sought treatment because he had been arrested for the murder of the victim. Moreover, the record is devoid of evidence that establishes the appellant's condition when he committed this offense. It is interesting to note that the independent witnesses who viewed and treated the appellant at the scene, the ambulance attendants, were not called as witnesses by the appellant.

■ The appellant's view of the evidence, i.e., that the appellant was not feuding with the victim prior to killing her, ignores the testimony of his own daughter, the mother-in-law, and the statements the appellant made to others that day. The daughter testified that the appellant and the victim constantly argued; and that most of the arguments involved his moving from the residence. It must be remembered that he did not move as requested by May 3, 1991. He was aware that the victim was going to take the necessary legal steps to have him removed from her residence if he did not move on or before May 11, 1991. The killing occurred only two days before this deadline. The daughter also heard the appellant tell the victim that he was going to kill her. While holding a shotgun, he ordered his mother-in-law to leave the residence. He also told one of the victim's siblings that he was going to kill the victim and his mother-in-law.

The residence in question was owned by the victim, not the appellant. It was located on land previously owned by the victim's mother. Since the appellant and the victim

had been divorced, it was appropriate for the victim to demand that the appellant move from the residence. This Court, like the trial court, finds that the evidence contained in the record does not support the appellant's theory that the killing was committed under such circumstances that it was unlikely that a sustained intent to commit the crime motivated his conduct. As the trial court noted, the evidence contained in the record would have supported a conviction for murder in the first degree.

■ This Court agrees with the appellant that his criminal record is insignificant. He has a prior conviction for public drunkenness. However, the appellant does not mention or allude to his criminal behavior. On the night in question, he ordered his mother-in-law to leave the residence while holding a shotgun in his hands. He disturbed the peace by attempting to engage Norma Smith in a fight. It became so heated that Smith's daughter went outside and attacked the appellant when he began calling her son vile names. In short, the appellant is not as pious and righteous as he proclaims. If the appellant is entitled to this mitigating factor, its significance is negligible.

### D.

■ This Court concludes that the evidence only supports one of the enhancement factors found by the trial court. There is only one mitigating factor, and it is entitled to little, if any, weight. Based on the nature of the offense, the injury inflicted to the victim, and the threats the appellant communicated to the victim and her relatives, a proper sentence is confinement for twenty (20) years in the Department of Correction.

The judgment of conviction is amended to show that the sentence of the appellant is confinement in the Department of Correction for twenty (20) years.

WADE and PEAY, JJ., concur.