IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

SEPTEMBER 1999 SESSION

**FILED**

November 10, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9811-CC-00405 |
| | ) | |
| vs. | ) | Sevier County |
| | ) | |
| MARSHA TRENTHAM, | ) | Hon. Richard R. Vance, Judge |
| | ) | |
| Appellant. | ) | (Voluntary Manslaughter) |
| | ) | |

FOR THE APPELLANT:
EDWARD CANTRELL MILLER
District Public Defender

DENNIS C. CAMPBELL
Asst. District Public Defender
140-A Court Ave.
Sevierville, TN 37862

FOR THE APPELLEE:
PAUL G. SUMMERS
Attorney General & Reporter

ERIK W. DAAB
Assistant Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

ALFRED G. SCHMUTZER
District Attorney General

STEVEN R. HAWKINS
Asst. District Attorney General
125 Court Ave., Rm. 301-E
Sevierville, TN 37862

OPINION FILED:_____

AFFIRMED

JAMES CURWOOD WITT, JR., JUDGE

## OPINION

The defendant, Marsha Trentham, appeals from the trial court's sentencing determination in her voluntary manslaughter case. The defendant received her conviction at a jury trial in the Sevier County Circuit Court for the shooting death of her husband. In this appeal, she challenges both the length of the six-year sentence imposed by the trial court and the imposition of incarceration in the Department of Correction. Following a review of the record, the briefs of the parties, and the applicable law, we affirm.

In the light most favorable to the state, the evidence at trial demonstrated that the defendant and the victim, Michael Trentham, had a stormy marriage. Apparently, the victim was disposed to fits of anger, and his outbursts had been seen and heard by neighbors on occasion. There is conflicting evidence whether the victim also physically abused the defendant.

On the evening of January 3, 1996, the victim was angry. Apparently, he directed unkind words at the defendant. The defendant claimed the victim threatened suicide and pointed a gun at himself, the defendant, and the couple's young child. The defendant claimed she took the gun from the victim, unloaded it, and hid it under a dishpan. Later, the defendant found the gun. Shortly thereafter, the victim lay dying on the living room floor of the couple's trailer home with a bullet through his forehead. The victim expired several hours later at a hospital.

The state offered expert evidence that the gunshot wound could not have been self-inflicted based upon the lack of smoke and soot on the victim's body, which would be present in a near or contact gunshot wound. The state's expert opined that the shot had been fired from a greater distance than would be possible if the defendant pulled the trigger himself through conventional means. On the other hand, in the defendant's tape-recorded call to 911 shortly after the shooting, she first indicated she shot the defendant in self-defense and later that she was trying to take the gun away from the victim when it discharged. At the hospital, the defendant told members of the victim's family that the victim had committed suicide. In a statement given to law enforcement the day after the crime,

the victim told the investigator that she had reached to take the gun away from the defendant, who was threatening suicide, and it discharged. Several months later, while under the influence of alcohol and marijuana, the defendant told friends that she had pointed the gun at the victim. The victim had dared her to shoot him, and thinking the gun was not loaded, the defendant pulled the trigger. At trial, the defendant claimed she and the victim struggled for the gun, and as she pulled it away, the weapon discharged.

At trial, the defendant faced conviction of second degree murder; however, the jury returned a verdict of voluntary manslaughter. At the sentencing hearing, the trial court imposed a maximum six-year sentence, which it ordered to be served in the Department of Correction. After the defendant's motion for correction or reduction of sentence was denied, see Tenn. R. Crim. P. 35, she filed this appeal.

I

We preface our consideration of the sentencing issues with a discussion of the timeliness of this appeal. Judgment was entered on August 17, 1998. The record reflects that no motion for a new trial was filed. A motion for correction or reduction of sentence was filed on September 16, 1998. The defendant's notice of appeal was not filed until November 5, 1998.

In order to be timely, the notice of appeal should have been filed and received by the clerk of the trial court within 30 days after entry of the judgment. Tenn. R. App. P. 4(a), (c). If a defendant fails to comply with the Rules of Appellate Procedure, the appellate court may waive timely filing in the interest of justice. Tenn. R. App. P. 4(a). Equally, the appellate court may choose not to allow an untimely appeal in a criminal case. See, e.g., State v. Cleotha Nash, No. 02C01-9701-CC-00026, slip op. at 3 (Tenn. Crim. App., Jackson, Feb. 18, 1998), perm. app. denied (Tenn. 1998); State v. Austin Kipling Stratton, No. 01C01-9611-CC-00472, slip op. at 2-3 (Tenn. Crim. App., Nashville, Dec. 4, 1997). Moreover, the filing of a motion for correction or reduction of sentence does not serve to toll the

time for filing an appeal under Rule 4.  <u>State v. Bilbrey</u>, 816 S.W.2d 71, 74-75 (Tenn. Crim. App. 1991).

Unlike many cases in which a notice of appeal is not timely filed, the defendant has not filed a motion to waive timely filing of the notice of appeal or any similar pleading.  Typically, such filing would contain acknowledgment that the notice of appeal was not timely filed and would include verified factual and/or legal assertions why the interests of justice dictate that we should waive timely filing of the notice of appeal.  <u>See</u> <u>Cleotha Nash</u>, slip op. at 3 (appeal dismissed where neither record nor allegation by the defendant provided sufficient basis for waiver of timely filing of notice of appeal).

Despite the defendant's shortcoming in this regard, we reluctantly waive the timely filing requirement for the notice of appeal. The defendant's only concern on appeal is the length and manner of service of her Range I, six-year sentence.  If we were to dismiss the appeal, by the time the direct appellate process is completed and she petitions for post-conviction relief based upon counsel's failure to pursue the direct appeal in a timely manner, the issue will likely be mooted by the expiration of her sentence.  Accordingly, in the interest of justice, we waive the requirement of timely filing of the notice of appeal. Tenn. R. App. P. 4.  We admonish counsel for this and other appealing parties, however, that this result is not a preordained conclusion, and we expect acknowledgment and an explanation when counsel has failed to comply with the Rules of Appellate Procedure.

**II**

We now turn to the sentencing issues presented in the defendant's appeal, whether the sentence is too lengthy and whether an alternative to incarceration should have been allowed.  When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. §40-35-401(d) (1997).  This presumption is "conditioned upon the affirmative showing in the record that the trial

court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the present case, the trial court considered the relevant factors and made findings regarding the enhancement and mitigating factors on the record. However, the court also made on-the-record comments before the sentencing hearing indicating its predisposition to requiring incarceration. At the sentencing hearing, the court substantially relied upon the fact that the crime was a homicide in imposing an incarcerative sentence. The pre-hearing comments and the reliance on the mere fact that the crime involved a death were improper. See State v. Bingham, 910 S.W.2d 448, 454-55 (Tenn. Crim. App. 1995). Accordingly, we conduct a *de novo* review unaccompanied by the presumption of correctness.

The defendant, a Range I offender, faces a sentence of three to six years for the Class C felony. At trial, the state argued for the application of three enhancement factors

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . .
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense.
> (15) The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense . . . .

Tenn. Code Ann. § 40-35-114 (1), (9), (15) (1997).

The defendant does indeed have a prior history of criminal behavior. There was evidence at trial and at the sentencing hearing that she used marijuana on a regular basis. Furthermore, there is evidence of a romantic relationship with a fourteen-year-old boy, who spent the night with the defendant on a regular basis, and with whom she consumed alcohol and smoked marijuana. The fact that these criminal acts did not result in a conviction is not determinative. See State v. Carico, 968 S.W.2d 280, 287 (Tenn. 1998). This enhancement factor is entitled to substantial weight. The defendant's marijuana use spans a number of years; she violated the law with her young boyfriend while she was on bond; she continued to use marijuana even after receiving her conviction.

That the defendant possessed a firearm during the commission of the offense is not open to reasonable dispute. Moreover, possession of a firearm is not an element of voluntary manslaughter. See Tenn. Code Ann. § 39-13-211 (1997); State v. David Keith Daugherty, No. 03C01-9203-CR-00082, slip op. at 7 (Tenn. Crim. App., Knoxville, Aug. 27, 1993); cf. State v. Raines, 882 S.W.2d 376, 385 (Tenn. Crim. App. 1994) (second degree murder). This enhancement factor is entitled to moderate weight.

We do not find that the defendant abused a position of private trust in committing the offense. Unlike the situations in State v. Jackson, 946 S.W.2d 329, 334-35 (Tenn. Crim. App. 1996), perm. app. denied (Tenn. 1997), and State

**6**

v. Kathy Ball, No. 03C01-9512-CC-00387, slip op. at 9 (Tenn. Crim. App., Knoxville, Oct. 31, 1997), the defendant in this case did not take advantage of her relationship with the victim in order to set up the crime or otherwise effectuate the offense.

Additionally, we find that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high . . . ." See Tenn. Code Ann. § 40-35-144(10) (1997). Although voluntary manslaughter necessarily entails a high risk to human life, see State v. Samuel D. Braden, No. 01C01-9610-CC-00457, slip op. at 10-11 (Tenn. Crim. App., Nashville, Feb. 18, 1998), the factor may be applied where there are one or more individuals other than the victim who are subject to danger. State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994). In the present case, the defendant shot her husband with their toddler son nearby. This factor is entitled to moderate weight.

Based upon the immediate presence of the toddler in the room where the crime was committed, we also find that "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great . . . ." See Tenn. Code Ann. § 40-35-114(16) (1997); cf. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). We afford this factor moderate weight.

Turning next to the mitigating factors, the defendant claims the following factors apply

> (2)   The defendant acted under strong provocation;
> . . .
> (3)   Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
> . . .
> (8)   The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;
> . . .
> (11)  The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;
> (12)  The defendant acted under duress or domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime . . . .

Tenn. Code Ann. § 40-35-113(2), (3), (8), (11), (12) (1997).

**7**

With respect to the first factor claimed by the defendant, action under strong provocation, we believe the defendant has received the maximum benefit that the facts of this case will allow by the jury's verdict of voluntary manslaughter, rather than second degree murder. Cf. Samuel D. Braden, slip op. at 11-12. As noted by the trial court, the defendant's various accounts of the crime were conflicting, so the degree to which she can claim strong provocation is subject to some question. Moreover, the defendant's theory at trial was that the shooting had been the accidental result of a struggle over a gun, not that she had been strongly provoked into shooting the victim.

Furthermore, the facts do not demonstrate substantial grounds tending to excuse or justify the defendant's actions as contemplated by factor (3). As with factor (2), the evidence relevant to this factor is marginal at best, and the defendant has already benefitted from that evidence to the extent that the facts of this case allow via the jury's voluntary manslaughter verdict. Cf. State v. Randy Cotham, No. 01C01-9509-CC-00287, slip op. at 9-10 (Tenn. Crim. App., Nashville, Dec. 5, 1996), perm. app. denied (Tenn. 1997); State v. Cindy Lynn Smith, No. 03C01-9206-CR-00219, slip op. at 7 (Tenn. Crim. App., Knoxville, Mar. 25, 1993).

There is absolutely no evidence of record that the defendant was suffering from a mental or physical condition which significantly reduced her culpability for the offense, as contemplated by factor (8). There is evidence that the defendant's life with the victim was unpleasant and stressful, and there is evidence that the defendant was in need of mental health treatment after the offense. It appears, however, that the defendant's need for treatment was related to the aftermath of the offense, rather than some continuing mental illness which played a part in the offense itself.

The defendant also claims the benefit of factor (11), that she committed the offense under such unusual circumstances that it is unlikely she has a sustained intent to violate the law. At the sentencing hearing, however, the defendant exhibited a disregard for the law. She admitted to ongoing marijuana

use, even after her conviction. Her statement, "I don't see where a joint every once in a while to help me go to sleep hurts," is telling of her indifference to living a lawful lifestyle. Other evidence before the court established a questionable, at best, relationship with a fourteen-year-old boy after the offense, with whom she used alcohol and marijuana.[1] Given these circumstances, we do not believe the defendant has demonstrated the applicability of this mitigating factor.

Finally, we do not believe the evidence demonstrates that the defendant acted under the duress or domination of another in committing the offense. The defendant's theory at trial of an accidental shooting is not consistent with such a finding.

Upon *de novo* consideration of the applicable enhancement factors and lack of mitigating factors, we agree with the trial court's imposition of a maximum, six-year sentence.

Next, we consider the manner of service of this sentence. The defendant came before the court as a presumed favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). This presumption may be rebutted, however, by evidence to the contrary. Id. Such "evidence to the contrary" is demonstrated by proof that

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1) (1997).

In the present case, measures less restrictive than confinement have

---

[1]We acknowledge that the use of alcohol by the defendant was not per se illegal, although it may have been a violation of the terms of her bond. However, her young friend was far below the legal drinking age. She was at least complicit if not outright culpable in his underage consumption in her presence. See Tenn. Code Ann. § 37-1-156(a) (1996).

recently been applied unsuccessfully to the defendant. While on bond, the defendant used marijuana regularly and had a questionable relationship with a fourteen-year-old boy that included the use of alcohol and marijuana. See State v. Lisa Gaye Copeland, No. 03C01-9605-CC-00196, slip op. at 5 (Tenn. Crim. App., Knoxville, May 13, 1997) (criminal acts committed while on bond); State v. Frederick Tennial, No. 02C01-9105-CR-00123, slip op. at 6 (Tenn. Crim. App., Jackson, May 20, 1992) (same). The defendant's unlawful actions both before and after her trial rebut the presumption of favorable candidacy for alternative sentencing.

Because we find a six-year incarcerative sentence justly deserved for the defendant's crime, we affirm the judgment of the trial court.


_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
JERRY L. SMITH, JUDGE