IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. EUNYCE MARIE SAUNDERS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S40,916    Phyllis H. Miller, Judge**

**No. E1998-00230-CCA-R3-CD - Decided June 8, 2000**

JUDGE WITT, dissenting in part and concurring in part

I respectfully dissent from the majority's holding that the evidence is sufficient to support the convictions in this case. I concur in the result of the majority's sentencing determination.

## I.  Sufficiency

Based upon the facts presented, I believe the defendant's actions were clearly negligent, and if a court of appropriate civil jurisdiction agrees, then a civil remedy will be (or perhaps has been) imposed. However, the facts supporting recklessness, as defined by Code sections 39-11-106(a)(31), 39-13-213(a)(1), and 39-11-302(c) are not so cogent and markedly defined that I am comfortable in concluding that our law criminalizes the defendant's actions on the basis of being reckless. I would hold that the evidence is insufficient to support the vehicular homicide and reckless aggravated assault convictions.

## A.  Criminal Liability Based on Recklessness.

I believe that, in cases of criminal liability for an injury or death resulting from the reckless operation of a motor vehicle, the determination of whether the defendant consciously disregarded a risk is informed by the extent to which the offender's action crossed some dimensional demarcation line. See Tenn. Code Ann. §§ 39-11-106(a)(31), 39-11-302(c) (1997). Examples include a defendant running a stop sign, crossing a highway centerline because of excessive speed, and driving at an outrageously excessive speed. See, e.g., State v. John H. Gillon, No. 02C01-9610-CC-00363, slip op. at 9-10, 15 (Tenn. Crim. App., Jackson, Oct. 10, 1997) (criminally negligent homicide evidence sufficient where defendant, without stopping at a stop sign of which he was aware, drove swiftly from a two-lane road across a four lane highway and collided with car traveling on the four lane), perm. app. denied (Tenn. 1998); State v. Timothy Dean Martin, No. 01C01-9609-CC-00393 (Tenn. Crim. App., Nashville, Feb. 23, 1998) (vehicular homicide evidence sufficient when proof showed that defendant crossed the centerline as a consequence of speed and struck an on-coming car); Eddie Jake Mysinger v. State, No. 314 (Tenn. Crim. App., Knoxville, Mar. 14,

1990) (evidence that defendant's speed was as high as 106 miles per hour was sufficient to support vehicular homicide conviction). See State v. Christopher Dale Gibbs, No. 01C01-9611-CC-00464 (Tenn. Crim. App., Nashville, Feb. 20, 1998) (defendant, who knowingly drove truck with defective steering in excess of speed limit, left road, and struck victim standing in victim's yard, properly convicted of vehicular homicide by recklessness). However, in the present case, the defendant's conduct was more equivocal. Even though the proof established that she was speeding, the accident was in part the result of inattentiveness or inadvertence. In State v. Timothy Gose, No. 03C01-9406-CR-00244 (Tenn. Crim. App., Knoxville, Jan. 29, 1996), this court indicated that exceeding the posted speed limit did not alone constitute gross negligence or recklessness but rather "a want of due care, inadvertence, and inattention." Id., slip op. at 3. In Roe v. State, 358 S.W.2d 308 (Tenn. 1962), our supreme court said that to establish homicide via negligent operation of automobile, the proof must show more than a "mere[] want of due care, inadvertence, or inattention," and the defendant must have known "or reasonably should have known that . . . the death charged was the natural and probable result of such negligence." Id. at 314. But see State v. Roy Houston Lane, III, No. 52 (Tenn. Crim. App., Jackson, Jun. 4, 1989) (affirming vehicular homicide by recklessness conviction based upon defendant "rear-ending" victim at a high rate of speed).

The exercise of "due care" denotes the standard for determining civil tort liability based upon negligence. McCall v Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). Something more than a failure to exercise due or reasonable care is required to elevate tortious carelessness to the level of criminal conduct. Tenn. Code Ann. § 39-11-302(d) (1997), Advisory Comm'n Comments. In cases of criminally *reckless* conduct, that "something more" is provided by the definition of recklessness which requires that the defendant be "*aware of but consciously disregard*[] *a substantial and unjustifiable risk*" when the disregard equals a gross deviation from the standard of care. Tenn. Code Ann. § 39-11-106(a)(31) (1997) (emphasis added). In my view, the evidence in the present case does not support a finding of recklessness. The evidence lacks dimensional indicators of a conscious disregard of a substantial and unjustifiable risk. Apparently, the defendant was unaware of the victims stopped in the road, and moreover, I must conclude that the defendant's speed was not *so* excessive that the defendant must have been aware beyond a reasonable doubt that her speed posed a substantial risk.

Because the convictions on both counts are based upon theories of recklessness, both should be reversed. Because I find no lesser included offense of the aggravated assault alleged in count two which is not based upon recklessness, I conclude that count two must be dismissed. The disposition of the vehicular homicide conviction in count one is more perplexing.

### B. Criminal Liability Based on Negligence.

Criminally negligent homicide offers a vehicular homicide alternative which is based upon negligence, not recklessness. Criminally negligent homicide occurs when death results from "criminally negligent conduct." Tenn. Code Ann. § 39-13-202(a) (1997). Criminally negligent homicide is a lesser included offense of vehicular homicide. State v. Roger D. Hipsher, No. 01C01-9111-CC-00332, slip op. at 2 (Tenn. Crim. App., Nashville, Oct. 8, 1992); see also State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). However, even though criminal negligence is based upon the

failure to perceive a risk and not the conscious disregard of the risk, criminal negligence requires still "something more" than the garden variety negligence of tort law. See State v. Roger Hostetler, No. 02C01-9707-CC-00294, slip op. at 10-11 (Tenn. Crim. App., Jackson, Mar. 27, 1998), applic. for perm. app. withdrawn (Tenn. 1998). In the case of criminal negligence, that "something more" is merely the requirement that the negligence must be a "gross deviation" from the standard duty of reasonable care. Id., slip op. at 11-12. See Tenn. Code Ann. § 39-11-106(a)(4) (1997) (criminal negligence requires that the *failure to perceive [the risk] constitutes a gross deviation* from the standard of care that an ordinary person would exercise") (emphasis added).

The public, especially the motoring public, should have fair and reasonable notice when their carelessness runs the risk of criminal sanction. However, as a definitional barrier between tortious and criminal conduct, "gross deviation" is a more amorphous concept than is "conscious disregard." Nevertheless, the legislature has used "gross deviation" to set the concept of *criminal* negligence apart from tortious negligence. That being the case, we must recognize that, unlike the establishment of a duty or standard of care, which is a matter of law, the scope of a duty, or the extent of a deviation from a standard of care, is usually a fact question for the jury. Jones v. Exxon Corp., 940 S.W.2d 69, 72 (Tenn. 1966); Roger Hostetler, slip op. at 11. Accordingly, I conclude that it fell to a jury to determine whether the defendant's conduct amounted to a gross deviation from the applicable standard of care.

Essentially, the jury has already made this determination when it found the defendant's conduct to be reckless. See Tenn. Code Ann. § 39-11-302(c) (1997) (definition of recklessness includes the element that the offender's disregard of a risk "constitutes a gross deviation"). Consequently, I would reverse the vehicular homicide conviction and impose a conviction of criminally negligent homicide.

## II. Sentencing

I agree with the remaining conclusions reached by the majority, except that I concur in the results only in the determination of the length of the defendant's sentence. My point of departure in this determination is the majority's application of enhancement factor (16), that the "crime was committed under circumstances under which the potential for bodily injury to a victim was great." See Tenn. Code Ann. § 40-35-114(16) (1997).

I agree that this court has reached conflicting conclusions concerning the use of factor (16) when some person other than the identified victim of the charged offense is endangered by the defendant's actions. As indicated by the majority, the "Sims" line of cases supports the conclusion that the factor applies when a person other than the identified victim is put at risk for bodily injury by the defendant's actions, even though that person experiences no injury or loss of property. See, e.g., State v. Antonio Coach, No. 02C01-9805-CC-00160 (Tenn. Crim. App., Jackson, Mar. 25, 1999); State v. Donald Ray Shirley, No. 03C01-9610-CR-00369, slip op. at 36 (Tenn. Crim. App., Knoxville, May 27, 1998), rev'd in part on other grounds, 6 S.W.3d 243 (Tenn. 1999); State v. Randal A. Thies, No. 02C01-9708-CC-00299, slip op. at 12 (Tenn. Crim. App., Jackson, Apr. 24, 1998); State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). On the other hand, the

"Bingham" line of cases holds that factor (16) is inapplicable in this situation. See, e.g., State v. Charles Justin Osborne, No. 01C01-9806-CC-00246, slip op. at 5-6 (Tenn. Crim. App., Nashville, May 12, 1999); State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). As a practical matter, the uncertainty over the use of factor (16) when bystanders are endangered but not adversely affected is of little consequence, because factor (10), that the "defendant had no hesitation about committing a crime when the risk of human life is high," is usually applicable in those scenarios. See Tenn. Code Ann. § 40-35-114(10) (1997). Factors (10) and (16) address the same policy issues, and a court that applies both factors typically recognizes that they are duplicitous and accords no appreciable weight to factor (16) in excess of that accorded to factor (10). Consequently, this court has not been importunate about resolving that conflict. See State v. Ladonte Montez Smith, No. M1997-00087-CCA-R3-CD, slip op. at 40 (Tenn. Crim. App., Nashville, Dec. 17, 1999); Antonio Coach, slip op. at 4. Nevertheless, the diversity of opinions on the subject hampers the trial courts, and it behooves us to clarify the use of factor (16).

The majority follows Sims because it finds that the number of opinions of this court which follow Sims exceeds the number of opinions which follow Bingham. Although the "weight of authority" rule has much to commend it, I find it useful to revisit the language of the statute. Factor (16) authorizes enhancement of a sentence when the crime is committed in circumstances where the "potential for bodily injury to a victim is great." Tenn. Code Ann. § 40-35-114(16) (1997). The wording suggests that the factor applies to committing a crime in such a way as to put the victim at great risk for bodily injury when putting the victim to such risk is not necessary to the commission of the crime. Moreover, the factor addresses the potential for bodily injury to a victim, not the possibility of injury to a potential victim. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995) (bystanders were "other potential victims"). I believe the scope of factor (16) is narrower than the scope of factor (10), and sentencing courts must account for the legislature's use of the word "victim" in factor (16) but not (10).

On the other hand, I do not believe it is useful to simply apply factor (16) when the "victim" is "a victim of the charged offense, . . . not a victim of some collateral injury, or a victim of some uncharged offense." Charles Justin Osborne, slip op. at 6. Making the use of factor (16) depend upon the presence of a victim of the charged offense could improvidently exclude the factor when the offense is essentially victimless by definition but was committed in a way that causes injury or loss to a person. See e.g., State v. Terry L. Byington, No. 03C01-9711-CC-00488 (Tenn. Crim. App., Knoxville, Nov. 12, 1998) (factor (16) applied in DUI case when trial court cited risk to persons on highway; proof showed that defendant struck another car and caused property damage to its owner), perm. app. denied (Tenn. 1999); State v. Aaron Eckard, No. 01C01-9610-CC-00429, slip op. at 8-9 (Tenn. Crim. App., Nashville, Dec. 12, 1997) (factor (16) applied in arson case in view of risk of injury or death to persons in the burning house, although proof showed that some of the persons experienced actual loss and injury); State v. Virginia Aileen Gann, No. 01C01-9704-CC-00164, slip op. at 14-15 (Tenn. Crim. App., Nashville, May 27, 1997) (factor (16) applied in DUI and evading arrest cases when, during the commission of these offenses, the defendant struck a parked police car), perm. app. denied (Tenn. 1998).

I believe the best approach in applying factor (16) is to ascertain first whether there is a victim, and if so, whether the victim has been put at great risk of bodily injury. The first part of this inquiry, to determine whether a *victim* is involved, should not be made by focusing upon the ambit of the charged offense. For purposes of applying enhancement factor (3), that the "offense involved more than one (1) victim," <u>see</u> Tenn. Code Ann. § 40-35-114(3) (1997), this court has defined "victim" as a "person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator or a crime." <u>State v. Raines</u>, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). I see no reason why the definition of "victim" used in one portion of the statute should not be the same for the same term used in another portion of the same statute. <u>See</u> <u>State v. Derek Denton</u>, No. 02C01-9406-CR-00186, slip op. at 22 (Tenn. Crim. App., Jackson, Aug. 2, 1996) (<u>Raines's</u> victim definition applied to enhancement factor (6)). Therefore, the first step in the factor (16) analysis should be to determine whether a person experienced the injury or loss necessary to qualify that person as a *victim* of the crime.

If the court determines that a victim is involved, it must then decide whether under the circumstances the defendant's offending conduct posed a great risk of bodily injury to the victim. Obviously, if bodily injury is the <u>Raines</u> component which defined a person as a victim, then the second requirement for applying factor (16) is met, at least where the injury was foreseeable. On the other hand, a victim may be defined by the experience of property loss or damage. After determining that such a victim exists, the court would then determine whether the victim was subject to great risk of bodily injury as contemplated by factor (16). Assuming that the use of factor (16) does not duplicate an element of the offense when applied to a victim, the court would utilize both steps in determining its applicability but only when the first step revealed that a person was a victim.

Applying this analysis to the present case and excluding the named victims of the conviction offenses, I conclude that none of the bystanders or persons in harm's way was a victim. None of them experienced any injury or property loss. Accordingly, factor (16) was misapplied by the trial court.

Having reached that conclusion, I nevertheless concur in the majority's ultimate disposition of the sentencing issues.

For these reasons, I dissent in part and concur in part.