**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session**

**STATE OF TENNESSEE v. LISA ANN BARGO**

**Direct Appeal from the Criminal Court for Sullivan County
No. S42,257    Phyllis H. Miller, Judge**

**No. E1999-00156-CCA-R3-CD
October 25, 2000**

Defendant Lisa Ann Bargo was convicted by a jury of one count of forgery, one count of attempt to commit theft over $10,000, and one count of criminal impersonation. The trial court subsequently set aside the jury verdicts on the attempt to commit theft and the criminal impersonation charges and sentenced the defendant on her forgery conviction to ten years as a Range II multiple offender to be served in the Department of Correction. In this appeal, the defendant challenges the sufficiency of the convicting evidence and the length of the sentence. We affirm the defendant's conviction and sentence.

**Tenn. R. App. 3; Judgment of the Criminal Court is Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Richard A. Tate, Assistant Public Defender, Blountville, Tennessee, for the appellant, Lisa Ann Bargo.

Paul G. Summers, Attorney General and Reporter, R. Stephen Jobe, Assistant Attorney General, H. Greeley Wells, Jr., District Attorney General, Teresa Murray Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Sullivan County Criminal Court jury convicted the defendant of one count of forgery with intent to defraud in an amount between $10,000 and $60,000, a Class C felony, one count of attempted theft in an amount between $10,000 and $60,000, a Class D felony, and one count of criminal impersonation, a Class B misdemeanor. See Tenn. Code Ann. §§ 39-14-105 (4) (1997) (grading theft), 39-14-114 (1997) (forgery); §§ 39-12-107(a) (1997) (grading attempt), 39-14-103 (1997) (theft); § 39-16-301(a)(1) (1997) (criminal impersonation). The trial court thereafter set

aside the jury verdicts on the attempt to commit theft and the criminal impersonation charges[1] and sentenced the defendant on her forgery conviction to ten years as a Range II multiple offender to be served in the Department of Correction. The defendant raises two issues on appeal:

1.  The evidence is insufficient to support the defendant's conviction for forgery.
2.  The trial court erred in sentencing the defendant to ten years as a Range II multiple offender.

Following a review of the record, the briefs of the parties, and the applicable law, we affirm the defendant's conviction and sentence.

On May 21, 1998, Lisa Ann Bargo went to the Don Hill Pontiac car dealership in Kingsport, Sullivan County, Tennessee, ostensibly for the purpose of purchasing a 1998 Jeep Wrangler Sport vehicle. A sales consultant with Don Hill Pontiac, Lanny Robertson, noticed the defendant looking at one of the new Jeep Wrangler vehicles in the dealership parking lot. Mr. Robertson approached the defendant and learned that she was interested in purchasing the Jeep Wrangler. The list price of the vehicle was approximately $22,000. After some discussion, Mr. Robertson and the defendant agreed upon a sales price. The defendant did not test drive the vehicle.

The defendant and Mr. Robertson then proceeded into the showroom to fill out the necessary paperwork. First, Mr. Robertson prepared a trade agreement reciting $22,060 as the agreed upon price of the 1998 Jeep. The defendant represented that she was going to pay $6,400 down and that she wanted to finance the balance of the price. The defendant indicated to Mr. Robertson that she was receiving some type of settlement, and she wanted the dealership to hold the down payment check. The defendant did not, however, tender a check that day.

The defendant did not use her real name in dealing with Mr. Robertson. She introduced herself as Linda Smotherman. Mr. Robertson prepared the trade agreement listing Linda Smotherman of Abingdon, Virginia as the purchaser, and the defendant signed the trade agreement using the name Linda Smotherman. Because the defendant a/k/a Linda Smotherman was going to finance almost $16,000 of the purchase price, Mr. Robertson provided her with a General Motors Acceptance Corporation ["GMAC"] credit application. Mr. Robertson explained to her how to complete the document, and the defendant sat in his office and filled out the application. The defendant again misrepresented her name to be Linda Smotherman, and she provided other false information on the application, including date of birth, social security number, address, and employer. The defendant signed the credit application as Linda Smotherman in Mr. Robertson's presence. Mr. Robertson explained that he did not ask to see the defendant's driver's license or any other identification because she had not asked to test drive the vehicle.

---

[1] The state filed a notice of appeal to challenge the trial court's dismissal of the jury verdict of guilty on these charges. However, in its brief submitted to the court on appeal, the state advises that it does not choose to pursue appellate review of the trial court's decision.

When the credit application was completed, Mr. Robertson took it to the finance office so a credit check could be performed. He also introduced the defendant to the backup credit manager working that day, Jim Haynes. Mr. Haynes identified at trial the defendant as the customer who claimed to be Linda Smotherman. Mr. Haynes discussed the down payment with the defendant. The defendant wanted to get the Jeep Wrangler the following day, but she was not going to make the down payment right away.

After the defendant left the dealership, Mr. Haynes sent the credit application to GMAC for approval, and he performed a computer credit check based on the information that the defendant supplied. Because it was a slow day for Mr. Haynes, he had more time than was usual to review the credit report. Among other things, Mr. Haynes noticed that the address on the GMAC credit application did not match that shown on the credit report. Moreover, the credit report showed a year of birth for Linda Smotherman as 1936, and it was obvious to Mr. Haynes that the defendant was younger. As a result, Mr. Haynes advised the general manager of the car dealership not to allow the defendant to have the vehicle.

The following day, Michael Stacy, who was the finance manager at Don Hill Pontiac, reviewed the inconsistencies that Mr. Haynes had discovered, and Mr. Stacy further investigated the matter. Mr. Stacy notified local law enforcement authorities of the situation, and Kingsport Officer Steve Summie was sent to the dealership. After Officer Summie arrived, a plan was implemented to get the defendant to come back to the dealership by telling her that her loan had been approved. The plan worked. When the defendant showed up at the dealership, Officer Summie was waiting for her. He asked for identification, and the defendant produced a Virginia drivers' license in the name of Lisa Bargo. When shown the GMAC credit application, the defendant denied filling out that document, whereupon Officer Summie placed her under arrest.

The real Linda Smotherman, whose name and social security number the defendant used, lives in Rittman, Ohio. Ms. Smotherman had never been to Sullivan County, Tennessee prior to testifying in this case. Likewise, Ms. Smotherman had never resided in Abingdon, Virginia. She denying signing either the trade agreement or the GMAC credit application, and she certainly did not authorize anyone to fill out the car dealership documents or authorize anyone to purchase a Jeep Wrangler on her behalf in Kingsport. Indeed, Ms. Smotherman did not know and had never met the defendant.

The defendant did not testify in her own behalf at trial, and she rested her case without offering any evidence.

## I.

In her first issue, the defendant challenges the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92 (1979); <u>State v. Duncan</u>, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Dykes</u>, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); <u>Farmer v. State</u>, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>Cabbage</u>, 571 S.W.2d at 835.

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. <u>Id.</u> at 835. In <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. <u>Id.</u> at 914.

We quote in full the claim that the defendant advances in her brief why her forgery conviction cannot stand:

> In the instant case Mr. Robertson, Mr. Haynes and Mr. Stacy all testified that the credit application was to GMAC and that Don Hill Pontiac would have gotten their money from them.

It is not the court's responsibility "to do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1ˢᵗ Cir.), (1990). We have deemed waived, and will continue to do so, issues put forth on appeal in perfunctory fashion, without substance, support, or explanation. Tenn. R. Crim. P. 10(b) (issues not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived). This issue, accordingly, is waived.

In any event, "A person commits an offense who forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a) (1997). The offense of forgery "is complete by the forgery with fraudulent intent, whether any third person be actually injured or not." State v. James, 688 S.W.2d 463, 466 (Tenn. Crim. App. 1984). "It is sufficient [if] the instrument forged, with the fraudulent intent, might have been prejudicial to the rights of another." Id.

There is ample evidence in this record demonstrating that the defendant knowingly represented herself to be Linda Smotherman and that she did so to deceive and defraud others, including Don Hill Pontiac. The dealership did not have to sustain any actual harm before the defendant could be found guilty of forgery. Furthermore, in light of the state's overwhelming proof of what the defendant did, the jury was entitled to conclude that she had the requisite intent to defraud. See e.g., State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984); State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996) ("It has long been established that a jury may infer a criminal defendant's intent from the surrounding facts and circumstances."). Absolutely no evidence was offered or theory of defense advanced that the defendant, for instance, acted mistakenly or accidently.

For this additional reason, we affirm the defendant's judgment of conviction.

**II.**

With respect to sentencing, the defendant claims that the trial court should have afforded greater weight to the mitigating factor that her "criminal conduct neither caused nor threatened serious bodily injury." See Tenn. Code Ann. § 40-35-113(1) (1997). So far as we can glean, the defendant does not challenge the trial court's findings that enhancement factors (1), (3), (8), (13), and (15) apply. See generally Tenn. Code Ann. §§ 40-35-114(1), (3), (8), (13), (15) (1997).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects that the trial court properly considered all relevant factors and that its findings of fact are adequately supported by the record, this court must affirm the sentence, even if our independent judgment on the question might differ. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial

and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(a), (b) (1997); Tenn. Code Ann. § 40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The trial court erroneously applied two enhancement factors. Even though they were accorded little weight, we review the sentencing determination *de novo* unaccompanied by the presumption of correctness.

From our review, the record in this case adequately supports the application of enhancement factor (1), that the "defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;" enhancement factor (8), that the "defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," and enhancement factor (13)(C), that the instant felony "was committed while [the defendant was] on probation." More particularly, when the defendant committed the offense of forgery, she was on probation serving a three-year sentence arising out of a Sullivan County theft conviction. The defendant had prior federal convictions in 1995 for bank fraud and credit card fraud; her supervised release on these convictions was revoked in 1997 based on her admitted violation of the terms of supervision. In addition, prior forms of probation and intensive probation relating to other state offenses had been tried without success. The defendant has a previous history of multiple criminal convictions and criminal behavior. She has sufficient prior convictions to qualify her for sentencing as a Range II multiple offender, and she has other independent convictions and has engaged in other criminal behavior sufficient for the application of enhancement factor (1). Hence, factors (1), (8), and (13)(c) apply and are entitled to great weight, as the trial court found.

There is, however, no evidence in the record supporting application of enhancement factor (3), that more than one victim was involved for each offense. The trial court's pertinent findings in this regard are as follows: "I find that number three (3) applies. It involved more than one victim. That woman whose name she forged was a victim. This has caused her a lot of trouble because it really was her social security number. It was her name. It was her social security number." However, the term victim, "as used in Tenn. Code Ann. § 40-35-114(3), is limited in scope to a person or entity that is injured, killed, or had property destroyed by the perpetrator of the crime." State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). Even though an injury that qualifies one as a victim may be emotional or psychological as opposed to physical, see State v. Michael Wilson, No. 01C01-9602-CC-00073, slip op. at 20-21 (Tenn. Crim. App., Nashville, Jul. 31, 1997), perm. app. denied (Tenn. 1998), there is no proof in the record that Ms. Smotherman was "injured." There is no factual foundation to apply enhancement factor (3), and the trial court improperly relied on this factor.

Application of enhancement factor (15) is equally troublesome. That factor permits the trial court to enhance a sentence if the "defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense." At sentencing, the state introduced an affidavit of complaint that had been filed in the Municipal Court of Johnson City charging the defendant with misdemeanor theft and misdemeanor destruction of valuable papers from her former employer, Publisher's Direct Service. The affidavit of complaint recites that the company discovered that the defendant had taken several documents from the company which had bank account numbers of clients. Linda Smotherman, whose name the defendant forged, was mentioned nowhere in the affidavit. Nonetheless, the trial court concluded that it had been proven circumstantially that the defendant obtained access to information about Ms. Smotherman in the course of her employment with Publisher's Direct Service. According to the trial court, there was "no other explanation for . . . where she got that name and that social security number, so I'm going to find that that one applies."

Guesswork, however educated, cannot replace the requirement that an enhancement factor be proven by a preponderance of the evidence. The evidence in this case is lacking, and the trial court incorrectly applied enhancement factor (15) in this case.

Based on our *de novo* review, we conclude that the only appropriate sentence enhancement factors in this case are (1), (8), and (13)(C). Regarding mitigation, the trial court correctly found that mitigating factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury, applied.

When, as here, both enhancement and mitigating factors apply, the trial court must start at the minimum sentence within the range, then enhance the sentence in accordance with the enhancing factors, then reduce the sentence in accordance with the mitigating factors. See Tenn. Code Ann. § 40-35-210(e) (Supp. 1999); State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). In the present case, we accord enhancement factors (1), (8), and 13(C) great weight, as did the trial court. We have also considered and apply mitigating factor (1) and afford it little weight, as did the trial court. The mere number of enhancement and mitigating factors is not relevant. Instead, "the important consideration [is] the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct." State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). Upon balancing these factors, we believe that the lesser weight of the mitigating factor is significantly exceeded by the enhancement factor. Accordingly, we believe that, a ten-year sentence as a Range II offender is appropriate. Thus, we affirm the defendant's sentence of ten years.[2]

In consideration of the foregoing and the record as a whole, we affirm the defendant's conviction and sentence.

---

[2] Although we have determined that enhancement factor (3) and (15) do not apply, we note that the trial court accorded these factors very little weight.

_____
JAMES CURWOOD WITT, JR., JUDGE