# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. RICHARD VANOVER

**Direct Appeal from the Criminal Court for Washington County**
**No. 25701, 26392     Robert E. Cupp, Judge**

---

**No. E2001-01671-CCA-R3-CD**
**August 27, 2002**

---

Defendant pled guilty to seventeen offenses and was subsequently sentenced to fourteen years in confinement. On appeal, defendant alleges that trial court committed error in (1) applying certain enhancing factors, (2) denying any form of alternative sentencing, and (3) ordering consecutive sentencing. We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Frederick M. Lance, Jonesborough, Tennessee, and Kristi M. Davis, Knoxville, Tennessee, for the appellant, Richard Vanover.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steven R. Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant Richard Vanover was found guilty by a Washington County jury on seventeen counts, *to wit*: nine counts of auto burglary, Class E felonies in violation of Tennessee Code Annotated section 39-14-402; two counts of theft over $1,000, Class B felonies in violation of Tennessee Code Annotated section 39-14-103; one count of burglary, a Class D felony in violation of Tennessee Code Annotated section 39-14-402; one count of theft over $500, a Class E felony in violation of Tennessee Code Annotated section 39-14-103; three counts of theft under $500, Class A misdemeanors in violation of Tennessee Code Annotated section 39-14-103; and one count of vandalism under $500, a Class A misdemeanor in violation of Tennessee Code Annotated section 39-14-408.

Defendant pled guilty, on May 19, 2000, to one count of theft over $1,000, a Class B felony; one count of non-habitation burglary, a Class D felony; one count of theft over $500, a Class E felony; eight counts of auto burglary, Class E felonies; one count of vandalism over $500, a Class A misdemeanor; and four counts of theft under $500, Class A misdemeanors. Defendant received consecutive sentences of two years for burglary, two years for theft over $1,000, one year for auto burglary, and one year for theft over $500. The sentences were ordered to be served concurrently with seven sentences of one-year each for auto burglary, four sentences of eleven months and twenty-nine days for theft under $500, and one sentence of eleven months and twenty-nine days for vandalism under $500. Defendant's effective sentence is six years. The trial court ordered defendant released on bond without entering a final judgment until June 26, 2001.

In a separate case, the Washington County Grand Jury indicted defendant on one count of vandalism over $10,000, a Class C felony in violation of Tennessee Code Annotated section 39-14-408. The offense was committed while defendant was on bond for the previous vandalism, auto burglary, and theft convictions. Defendant pled guilty on April 16, 2001 to this charge in exchange for a sentence of eight years, to be served consecutively to his prior sentences. The trial court denied defendant any form of alternative sentencing and entered final judgments on June 26, 2001.

## Facts

This appeal involves convictions for offenses that occurred as a result of two separate incidents, one in April of 1999 and one in April of 2000. The evidence shows that on three nights defendant served as a "lookout" while two other men burglarized six cars at Carpenter's Auto Repair in Johnson City, stealing stereos and other valuables. They also stole a car from J. Sweeney Auto Sales in Johnson City. Defendant and the others returned to Carpenter's Auto Repair and burglarized a building and two other vehicles. Defendant was ultimately arrested and charged with vandalism and various counts of burglary and theft. Defendant subsequently admitted his involvement in committing the offenses. Though defendant was seventeen years old at the time, jurisdiction was transferred from juvenile court to the Washington County Criminal Court where he was later indicted.

While defendant was released on bond, he and another underage person were using marijuana and alcohol. While under the influence, defendant caused damages totaling $10,000 to graves and grave markers in the historic Oak Hill Cemetery in Johnson City.

The record reflects that while defendant was on bond, he failed drug screening tests and refused to submit to a drug screen test.

Testimony at the sentencing hearing reveals that approximately thirty to thirty-five tombstones were damaged at the cemetery where defendant committed vandalism. Defendant testified that he has had a drug problem since he was thirteen and that he had been hanging around a group of people who were bad influences on him. He stated that he had never been in a drug

rehabilitation program and that he needed help with his drug problem. He stated that he had employment lined up with his father and that he was sorry for what happened.

Defendant's mother testified that her child had a difficult childhood but that he did not have any problems during the period when they moved to a different part of town. She stated that if released, defendant could live at home and that he had several job prospects.

The presentence report shows that defendant was adjudicated delinquent in 1995 for aggravated burglary and also shows that defendant was helpful in the investigation of the crimes for which defendant was convicted. Lastly, it shows that defendant was in special education classes and performs academically on a third or fourth grade level. Defendant is also willing to make restitution in the amount of $50 to $100 a month.

## Analysis

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct. Tenn. Code Ann. §§ 40-35-401(d), 40-35-402(d) (1997). If our review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). On the other hand, if the trial court failed to comply with the statutory guidelines, our review is *de novo* without a presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The defendant has the burden of establishing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In determining whether the defendant has carried this burden, this Court must consider: (a) the evidence adduced at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; and (f) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997).

### I. Enhancement and Mitigating Factors

Defendant alleges that the trial court misapplied enhancement factor (2) of Tennessee Code Annotated section 40-35-114 in finding that defendant was a leader in the commission of the offenses. The record indicates that defendant served as a "lookout" for the others involved in the burglaries and thefts. Regarding the vandalism of the grave sites, the record supports the trial court's assertion that, "[Defendant] again got up with his buddies to go out and destroy one of the most historical things that we have within this community." Defendant did not have to be the *sole* leader, just *a* leader. State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). The record supports the application of this factor.

Defendant also contends that the trial court erred in not applying mitigating factor (4) of Tennessee Code Annotated § 40-35-113 and again alleges that he played a minor role in the offenses. However, for the same reasons supporting the abovementioned enhancement factor, the record does not support the application of this mitigating factor. The trial court did not err in failing to apply this factor.

Defendant asserts that the trial court erred in applying enhancement factor (3) when the trial court found that the offense of vandalism in a cemetery involved a victim. This Court has previously stated that "victim" as used in enhancement factor (3) "is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). Such was not the case here as the "victims" were tombstones and grave sites and those buried within the graves. In Raines, we stated the following:

> . . . the term does not include a person who has lost a loved one. . . Moreover, giving the term a generic meaning would deprecate this factor and render it meaningless. Every time a person is murdered, a spouse, child, parent, sibling or collateral relative loses a loved one. Thus, this enhancement factor would be applied by operation of law; and, if a serious injury was inflicted, the same would be true.

Id. If application of this factor cannot be meant to apply when a person loses a loved one, how can it possibly be meant to apply in a case such as this? Though this Court certainly appreciates the sense of loss and frustration that the community of Johnson City feels in this case, we believe our Court has spoken on the issue of the applicability of this factor. Therefore, to avoid giving the term "victim" a generic meaning as contemplated in Raines, we conclude the trial court erred in applying this factor. We do conclude, however, that although application of this factor was error, when viewed in light of the remaining five applicable enhancement factors that defendant does not contest, the error was harmless beyond reasonable doubt.

Finally, defendant contends that the trial court erred in not applying the catchall mitigating factor (13) and should have considered defendant's age at the time of the offenses, education, willingness to make restitution, and expression of remorse at the sentencing hearing. We conclude, however, that the record is replete with evidence rebuffing defendant's assertion that he is entitled to mitigation. The evidence shows that defendant failed drug screens and was guilty of vandalism over $10,000, as well as evading arrest and possession of marijuana while out on bond. The record certainly supports the trial court's finding that defendant demonstrated little or no potential for rehabilitation. Further, the record shows that defendant was at times less than truthful when testifying and speaking with his presentence investigator. Lack of truthfulness is probative on the issue of a defendant's potential for rehabilitation and should be considered in granting or denying an alternative sentence. State v. Neeley, 678 S.W.2d 48, 49 (Tenn. 1984); see also State v. Gennoe, 851 S.W.2d 833, 834 (Tenn. Crim. App. 1992). We affirm the trial court's ruling with respect to mitigating factor (13).

II. Denial of Alternative Sentencing

Defendant contends that the trial court erred in denying him alternative sentencing such as probation or Community Corrections. He asserts that his sentence to total confinement is unjust. We disagree and affirm.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d 456, 462 (Tenn. 1999). In the instant case, defendant pled to Class C, D, and E felonies. He is therefore presumed a favorable candidate for alternative sentences. However, the presumption can be rebutted if

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991). Finally, in determining if a defendant is suitable for alternative sentencing, a court should consider enhancing and mitigating factors. Tenn. Code Ann. §§ 40-35-113, -114; Tenn. Code Ann. § 40-35-210(b)(5).

As one option of alternative sentencing, defendant contends that he should have been placed on probation. A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, and the need for deterrence. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

Defendant also argues that the trial court should have allowed him to serve his sentence in the Community Corrections Program. The Tennessee Community Corrections Act was developed to "punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1). The program is available for

> (1) persons who, without this option, would be incarcerated in a correctional institution;

(2) persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person . . .;

(3) persons who are convicted of nonviolent felony offenses;

(4) persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(6) persons who do not demonstrate a pattern of committing violent offenses . . . .

Id. § 40-36-106(a)(1)-(6). Those who are sentenced to incarceration or are on escape at the time of sentencing are not eligible for the program. Id. § 40-36-106(a). No defendant has the absolute right to be sentenced pursuant to the Community Corrections Act. State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

As previously noted, the evidence indicates that defendant was less than truthful in statements to his presentence investigator and testimony to the court regarding his drug use. Additionally, defendant's criminal record included a felony conviction for aggravated burglary when defendant was a juvenile. For purposes of the cemetery vandalism charges, the offenses of vandalism, auto burglary, and thefts committed while defendant was out on bond were considered as part of his criminal record. The record also reflects that defendant has abused drugs and alcohol.

The court found that confinement was necessary to keep from depreciating the seriousness of the offense - damage to numerous 100+ year-old grave markers. Indeed, the evidence reveals that the cemetery contained the graves of the designer of the Tennessee state flag, the founder of Johnson City, the first female mayor of Johnson City, many veterans of the Civil War, and many children. This Court has stated that in order for alternative sentencing to be denied on the basis of the seriousness of the offense, the circumstances must be "'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) (quoting Hartley, 818 S.W.2d at 374) (citations omitted)). Defendant's actions were certainly reprehensible and shocking, and confinement is warranted so as to both keep from depreciating the seriousness of the offense and to provide an effective deterrent to others.

The evidence also showed that defendant had previously committed criminal offenses while either on probation or out on bond. Finally, application of the aforementioned enhancing factors support the trial court's conclusion. We affirm.

*III. Consecutive Sentencing*

Defendant asserts that the trial court erred in imposing consecutive sentences. A court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that the defendant fits into one of the categories established in the statute. Tenn. Code Ann. § 40-35-115(b). It is within the sound discretion of the trial court whether or not an offender should be sentenced

consecutively or concurrently. <u>State v. James</u>, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). However, as the State points out and the record indicates, the imposition of consecutive sentences was the product of negotiated plea bargaining and not the trial court's judgment. As such, defendant will receive that for which he bargained. We affirm.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE