IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 13, 2002

## STATE OF TENNESSEE v. JAMES MICHAEL SCOTT

**Direct Appeal from the Circuit Court for Sumner County**
**No. 76-2001     Jane W. Wheatcraft, Judge**

———————————

**No. M2001-02000-CCA-R3-CD - Filed September 20, 2002**

———————————

The defendant contests the sentences he received for his convictions of aggravated burglary (six years), aggravated assault (five years), and theft over $10,000 (four years). The court ordered the burglary and assault convictions to run consecutively to each other. We conclude upon de novo review that, although the trial court misapplied certain enhancement factors, those remaining were properly applied and justified the sentences. Additionally, the fact that this offense was committed while on probation justified the imposition of consecutive sentences. We affirm the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Eric L. Davis, Franklin, Tennessee, for the appellant, James Michael Scott.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Joe James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, James Michael Scott, was indicted for aggravated burglary, aggravated assault, aggravated robbery, and carjacking. Pursuant to a blind plea agreement, the defendant pled guilty to aggravated burglary, aggravated assault, and theft of property with a value over $10,000, all Class C felonies. After a sentencing hearing, the trial court sentenced the defendant, a Range I standard offender, as follows: six (6) years for the aggravated burglary conviction, five (5) years for the aggravated assault conviction, and four (4) years for the theft of property conviction. The trial court ordered the theft conviction to be served concurrently with the other counts but ordered the burglary and assault convictions to be served consecutively to one another, for an effective eleven-

year sentence.   In this timely appeal, the defendant challenges the length and manner of service of his sentences.

## Facts

The defendant and two co-defendants, Raymond Lokey and Michael Wright, broke into the home of Kevin Sadler around noon on December 29, 2000.  Lokey knocked on the door first to ensure that no one was at home.  Then, Wright and the defendant entered the house and began taking things outside to Lokey, who loaded the truck and also served as a lookout.   While the defendant and Wright were inside the house, David Sadler, Kevin Sadler's father, drove past the home and noticed the defendant's truck parked in the driveway.  Mr. Sadler stopped to investigate and was met outside by Lokey, who had a handgun.  Lokey pointed the gun at Mr. Sadler and ordered him inside the residence.  Once inside, Mr. Sadler observed Wright in the kitchen taking things from the cabinets.  Mr. Sadler informed Lokey that "the law was on the way," and Lokey ordered Mr. Sadler to sit on the couch.  The defendant exited one of the bedrooms and covered his face with his hands.  All three men quickly left without saying anything else to Mr. Sadler.  One of the defendants tore out the phone lines inside the house, and Wright drove away in Mr. Sadler's truck.  A few blocks away, Wright abandoned Mr. Sadler's truck and got into the truck with Lokey and the defendant.  Soon after the defendants left, Mr. Sadler reported the burglary to the police.  A short time later, all three defendants were apprehended by the Tennessee Highway patrol while riding in the defendant's truck.  Mr. Sadler was transported to their location and positively identified Lokey and Wright but was unable to identify the defendant.

Lokey testified at the sentencing hearing that he was the defendant's roommate at the time of the burglary.  The morning of the burglary, the three defendants drove around looking for a house to burglarize.  Wright, who was driving, told Lokey to knock on the door to see if anyone was inside the Sadler residence.  Lokey knocked a couple of times and Wright told him to knock again, harder.  Thereafter, the three of them went around to the back of the house.  Wright took the gun and a screwdriver and kicked the door open.  He and the defendant then went inside to check for occupants.  After informing Lokey that the house was clear, Wright and the defendant began taking things from inside the home.  Lokey testified that he was the "load man," which essentially means that he remained outside to load the truck and act as a lookout. Although positive that Wright  had the gun when Wright kicked the door open, Lokey testified that the defendant was the person who handed the gun to him.  The defendant told him that in the event someone approached the house, Lokey was to escort them inside.

Lokey also claimed that the defendant told Lokey to kill Mr. Sadler, but he refused.  He further testified that he only took the gun because he was afraid of the defendant and that the instant offense was his first time to commit a burglary. However, upon further questioning by the trial judge, he admitted that he had previously acted as "load man" in other burglaries which were committed by the three defendants in Trousdale.  He also admitted that he was the person who possessed the gun during those burglaries. On cross-examination, Lokey admitted that he had two charges pending for attempted  murder  in  Davidson  County,  which  also  involved  a  gun.  The  crimes  were  not

committed with the defendant or Wright, but Lokey again claimed that the gun he used was given to him by another person involved in the crimes.

Mr. Wright's testimony about the circumstances of the burglary was similar to Lokey's. However, Wright claimed that he never possessed the gun. He also testified that he, not the defendant, was in the bedroom when Lokey brought Mr. Sadler inside at gunpoint. He covered his face and then exited the house. Wright did not hear the defendant tell Lokey to kill Mr. Sadler. He further testified that he did not believe the defendant would make such a statement, explaining that it was inconsistent with the defendant's personality. After Wright exited the Sadler residence, he noticed that Mr. Sadler's truck was running and, without thinking, got inside and drove away. The defendant and Lokey followed Wright out of the house but got into the defendant's truck. A few minutes later, Wright parked Mr. Sadler's truck on the side of the road and got into the truck with his co-defendants. According to Wright, the motivation for the burglary was to get money to pay the rent due on the defendant's apartment. Wright had been living at the defendant's apartment, sleeping on a cot, for about three weeks, and Lokey had been living there for two months.

The defendant's father, mother, uncle and grandmother all testified that the defendant had been a "straight" A student with few problems until his maternal grandmother died two years earlier. He was apparently very close to his grandmother, and she literally died in his arms. After her death, the defendant moved out and was involved in a number of burglaries. At the time of the instant offense, he was on bail awaiting sentencing for a string of burglaries in Williamson County, all of which were committed on one day. He was also on probation for a misdemeanor theft conviction, which was allegedly committed by the defendant's cousin. According to the defendant, his cousin broke into a car while the defendant was inside his girlfriend's apartment. When the defendant returned to his truck, his cousin was waiting for him and had placed the stolen merchandise in the truck. Later that day, he defendant was pulled over by law enforcement and, along with his cousin, charged with felony auto burglary. The charge was later reduced to theft of property with a value under $500.

A police detective who interviewed the defendant after his arrest for the instant offense testified that the defendant volunteered information about other unsolved burglaries which had been committed by the defendant, Lokey, and Wright. The defendant also assisted the detective in locating stolen property which had been taken during those burglaries.

### Analysis

As his first issue, the defendant challenges the length of his sentences, arguing that the trial court failed to consider or apply appropriate statutory mitigating factors and misapplied enhancement factors. This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) . However, this presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial

court fails to comply with the statutory directives, there is no presumption of correctness, and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The defendant's convictions for aggravated assault, aggravated burglary, and theft of property valued over $10,000 are all Class C felonies. Tenn. Code Ann. §§ 39-13-102(d); 39-14-403(b). The presumptive sentence for a Class C felony is the minimum in the relevant range, increased by applicable enhancement factors, and decreased by applicable mitigating factors. See id. § 40-35-210(c), (e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); see Tenn. Code Ann. § 40-35-210 Sentencing Comm'n Comments. A Range I sentence for a Class C felony is three to six years. See id. § 40-35-112(a)(3).

The trial court misapplied one or more enhancement factors for each sentence and failed to apply an additional mitigating factor. Accordingly, our review must be de novo without any presumption of correctness. See Poole, 945 S.W.2d at 96.

## ENHANCEMENT FACTORS

1. Aggravated Burglary

The trial court enhanced the defendant's sentence for aggravated burglary from the minimum of three years to the maximum of six years. The trial court found seven enhancement factors applicable to the aggravated burglary conviction: (1) the defendant's previous history of criminal convictions or criminal behavior; (2) the defendant was a leader in the commission of the offense; (3) the offense involved more than one victim; (8) the defendant's history of unwillingness to comply with the conditions of an alternative sentence; (9) the defendant possessed or employed a firearm; (10) the defendant had no hesitation about committing an offense with a high risk to human life; (13)(a) the offense was committed while the defendant was on bail for a previous felony conviction and was ultimately convicted; and (13)(c) the offense was committed while the defendant was on probation for a previous felony conviction. Tenn. Code Ann. § 40-35-114 (1), (2), (3), (8), (9), (10), (13)(a), (13)(c).

The defendant does not challenge the trial court's application of enhancement factors (1), (8), or (13)(a). However, the defendant maintains the trial court erred in applying enhancement factor (2) the defendant was a leader in the commission of the offense, (3) the offense involved more than one victim, (9) the defendant possessed or employed a firearm, (10) there was no hesitation in committing an offense with high risk to human life, and (13)(c) the defendant was on probation for a felony when the offense was committed. We disagree with defendant's argument concerning factor (2) . With respect to factor (2), the defendant argues that the evidence contradicts a finding that he was "the" leader. However, enhancement factor (2) can apply even if the defendant is not the sole leader, but rather "a" leader. State v. Hicks, 868 S.W.2d 729 (Tenn. Crim. App. 1993). Testimony

by several witnesses revealed that the defendant instigated the instant offense by informing the co-defendants that they needed to "jack a house" in order to get money to pay the rent due on the defendant's apartment. In addition, the defendant handed a gun to Lokey and instructed him that should anyone approach the house, he was to escort them inside. Thereafter, the defendant and Wright went inside the Sadler residence and took items outside for Lokey to load into his truck. Thus, the evidence supports the trial court's finding that the defendant was "a" leader in the commission of this offense.

We agree with the defendant's contention that the trial court misapplied enhancement factor (9), but we do not reach our conclusion based on the defendant's reasoning. Enhancement factor (9) applies when proof exists that "the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense." Tenn. Code Ann. § 40-35-114(9). The defendant argues that it was Lokey who possessed the weapon during the commission of the burglary. The indictment alleged the defendant unlawfully entered the habitation "with the intent to commit . . . theft." The crime of burglary is complete and has been committed when an entry has been made without consent and with the intent to commit a felony once inside. State v. Lindsay, 637 S.W.2d 886, 889 (Tenn. Crim. App. 1982); see Tenn. Code Ann. §§ 39-14-402(a), -403(a). This case presents circumstances similar those in State v. Teague, where this Court rejected the trial court's application of this enhancement factor. State v. Teague, No. 02C01-9704-CC-00132, 1997 Tenn. Crim. App. LEXIS 814, at * (Tenn. Crim. App. August 27, 1997, at Jackson) (holding that application of enhancement factor (9) is not properly applied to enhance aggravated burglary conviction where record is devoid of evidence that defendant possessed a weapon while "effecting entry into [the victim's] home")). There is no evidence that this defendant "possessed or employed a weapon while effecting the entry into [the victim's] home." To the contrary, the testimony established that Wright was the person who possessed the weapon while effecting entry into the house. At some point after the defendants gained entry to the house, the defendant again acquired possession of the gun and handed it to Lokey.

We agree with the defendant that enhancement factor (3), the offense involved more than one victim, was not applicable to this conviction. This Court has held that the term "victim," as used in Tennessee Code Annotated section 40-35-114(3), "is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). Aggravated burglary is defined as the burglary of a habitation, and one commits burglary by entering a building without the consent of the owner with the intent to commit a felony or theft. Tenn. Code Ann. §§ 39-14-402(a), -403(a). Under the proof in this case, the burglary was committed for the purpose of committing theft. There is only one property owner alleged in the indictment, and the testimony of the homeowner, Kevin Sadler, does not indicate that the separate property of another victim was stolen. Finally, the defendant has been separately convicted for the aggravated assault of Mr. Sadler, the only person present during the burglary. This Court has previously recognized that enhancement factor (3) does not apply when there are separate convictions for each victim. Therefore, the trial court erred in applying factor (3) to enhance the defendant's aggravated burglary conviction.

The record does not support the application of enhancement factor (10), that there was no hesitation in committing an offense with a high risk to human life. In our view of the evidence, the defendants did hesitate to commit a crime that posed a high risk to human life. They chose to burglarize the Sadler residence during the day, a time when the occupants were unlikely to be at home. In addition, they knocked on the door to ensure that no one was at home. They even knocked a second time, louder, to ensure that no one was sleeping in the residence and unable to hear the first knock. In short, the defendants took steps to avoid contact with any occupants of the home.

Finally, factor (13)(c), the defendant was on probation for a felony when the offense was committed, is also inapplicable to the instant defendant. The record reveals that the defendant was on unsupervised probation for a misdemeanor theft conviction. Because factor (13) requires that the underlying conviction be a felony, the trial court misapplied this factor.

2. Aggravated Assault

The trial court enhanced the defendant's sentence for aggravated assault from the minimum of three years to five years by applying six enhancement factors: (1) the defendant's previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range, (8) the defendant's history of unwillingness to comply with the conditions of a sentence involving release into the community, (9) the defendant possessed or employed a firearm, (10) the defendant had no hesitation about committing an offense with a high risk to human life, (13)(a) the offense was committed while the defendant was on bail for a felony and was ultimately convicted, and (13)(c) the offense was committed while the defendant was on probation for a previous felony conviction.

For the same reason as we stated above, factor (13)(c) is inapplicable. In addition, the defendant submits that factor (9), the defendant possessed or employed a firearm during the commission of the offense, and factor (10), the defendant had no hesitation about committing a crime with a high risk to human life, cannot be applied to the aggravated assault convictions. We agree. The use of a weapon is an essential element of the offense of aggravated assault as charged in the indictment and was, therefore, misapplied. See State v. Jones, 883 S.W.2d 597 (Tenn. 1994) (holding that enhancement factors that are inherent in the elements of an offense, as they are charged in the indictment, cannot be applied to enhance punishment within the applicable range). Furthermore, the use of a deadly weapon necessarily creates high risk to human life. Although this Court has found that factor (10) may still be applied if persons other than the victim are placed in danger by the actions of the defendant, that did not occur in the instant case. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). Therefore, factor (10) was also misapplied.

3. Theft

The trial court enhanced the defendant's sentence for theft of property from the minimum of three years to four years. The trial court properly applied enhancement factors (1), (8), and (13)(a) to the theft conviction. However, for the reason stated above factor (13)(c) was misapplied.

In summary, the trial court properly applied enhancement factors (1), (2), (8), and (13)(a) to enhance the defendant's aggravated burglary conviction, and (1), (8), and (13)(a) to enhance the defendant's aggravated assault conviction and theft convictions.

## MITIGATING FACTORS

The trial court applied one mitigating factor, (9) the defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses. The defendant asserts that the trial court should have applied the following additional mitigating factors: (1) the defendant's conduct neither caused nor threatened serious bodily injury during the aggravated burglary or the theft of Mr. Sadler's truck , (4) the defendant played a minor role in the commission of aggravated assault and theft of Mr. Sadler's truck, (6) the defendant, because of youth or old age, lacked substantial judgment in committing the offenses; (7) the defendant was motivated by a desire to provide necessities;  (10) the defendant assisted the authorities in locating or recovering any property or person involved in the crime, and (11) the defendant committed the  theft of Mr. Sadler's truck under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct.  See Tenn. Code Ann. § 40-35-113 (1), (4), (6), (7), (10), (11).

We agree with the defendant's contention regarding mitigating factor (1) but conclude that the remaining factors were properly rejected by the trial court.  As we held previously, the crime of aggravated burglary is completed once entry into a residence has been made without consent and with the intent to commit a felony inside.  State v. Lindsay, 637 S.W.2d 886, 889 (Tenn. Crim. App. 1982).  Because the victim of the aggravated assault did not arrive at the Sadler residence until after the crime of aggravated burglary was complete, the defendant's conduct did not cause or threaten serious bodily injury during the commission of the burglary.  Likewise, the victim was alone inside the residence when Wright decided to steal his truck from the driveway and was never threatened or harmed during the commission of the theft.  Therefore, the defendant's conduct neither threatened nor caused serious bodily harm during the commission of the theft.  Although the trial court should have applied mitigating factor (1) to the aggravated burglary and theft convictions, we conclude that it is entitled to very little weight given the defendant's role in bringing the weapon with him.

As for the defendant's argument that he played a minor role in the commission of the aggravated assault and theft of Mr. Sadler's truck, we agree with the trial court that factor (4) "is not applicable at all, especially to [the defendant]."  The defendant supplied an essential element of the aggravated assault conviction by bringing the gun with him and giving it to Lokey.  Furthermore, we decline to view the defendant's role in instigating the entire criminal episode as minor, especially for the crime of theft which was his admitted purpose for being at the Sadler residence.

With regard to mitigating factor (6), the defendant failed to demonstrate that he lacked substantial judgment or that he was unable to appreciate the nature of his criminal conduct due to youth.  The trial court found that the defendant, age eighteen, "knew exactly what [he] was doing. [He] has done it before."  We agree that the defendant was not sufficiently youthful to apply this

factor. Factor (7), which may allow mitigation for crimes motivated by a desire to provide necessities, is also inapplicable in the defendant's circumstances. Although all three defendants testified that the motivation for the crimes was to obtain money to pay the defendant's rent, it is nonsensical to condone aggravated burglary as a solution to possible late rent payments. We agree with the trial court's finding that "there is an alternative and it's called work." Apparently, the defendant had been out of work for a few weeks. However, there is nothing in the record to indicate that the defendant had been trying to secure employment during that time. Instead, the record reveals that the defendant had been diligently pursuing his chosen occupation, burglary.

Factor (10), the defendant assisted the authorities in locating or recovering any property or person involved in the crime, is inapplicable to the instant convictions. Tennessee Code Annotated section 40-35-113 (10) provides that a defendant may receive credit in mitigation for "assist[ing] the authorities in locating or recovering any property or person involved in the crime." Therefore, the defendant must have assisted the authorities in recovering property taken during the commission of the instant offenses in order for this factor to be properly applied. Although the defendant assisted authorities in recovering property taken during a previous burglary, the property taken during the commission of the instant burglary was in the truck with the defendants when they were apprehended. Thus, the defendant provided no assistance in recovering that property other than his unintended ineptness.

## CONSECUTIVE SENTENCES

The defendant argues that the trial court erred by ordering consecutive sentences. The trial court ran the defendant's sentence for aggravated burglary consecutively to the sentence for aggravated assault and the sentence for theft of property concurrently with the other two sentences. Tennessee Code Annotated section 40-35-115 establishes various bases for imposing consecutive sentences. Of these, the trial court relied upon the defendant's extensive record of criminal activity, his status as a dangerous offender, and the circumstance that the present offenses were committed while he was on probation. Tenn. Code Ann. § 40-35-115(b)(2), (4), (6).

We observe initially that it is questionable whether the record contains a basis for applying factor (2), the "defendant is an offender whose record of criminal activity is extensive" or (4), that the defendant was a "dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." See Tenn. Code Ann. § 40-35-115(b)(2), (4). Nevertheless, we need not spend time and lineage analyzing the propriety of these factors. The trial court need only find one of the statutory criteria to exist to justify consecutive sentencing. In the present case, the record competently supports the application of factor (6), that he committed the present offenses while on probation. See Tenn. Code Ann. § 40-35-115(b)(6). Thus, the trial court was allowed to order the two sentences to be served consecutively. The defendant has failed to demonstrate how the evidence preponderates against the trial court's ordering consecutive sentences.

## CONCLUSION

Based upon our de novo review of the record, we find that the length of the defendant's sentences for aggravated assault and theft was proper due to the great weight of enhancement factors (1), (8), and (13)(a). Furthermore, the defendant's sentence for aggravated burglary was also proper based on enhancement factors (1), (2), (8), and (13)(a). Finally, the trial court's imposition of consecutive sentences was proper based upon the defendant's probation status when the instant offenses were committed.

 

_____

JOHN EVERETT WILLIAMS, JUDGE