# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 30, 2003

## STATE OF TENNESSEE v. MARIAN ESTHER COX

**Direct Appeal from the Circuit Court for Bledsoe County**
**No. 5-1998     Thomas W. Graham, Judge**

------------

**No. E2002-01177-CCA-R3-CD**
**June 23, 2003**

------------

The Defendant entered a "best interest" guilty plea to arson, a Class C felony. Following a sentencing hearing, the trial court sentenced the Defendant to a split confinement sentence of four years, with one year to be served in the Bledsoe County jail and the remainder to be served on probation. The Defendant now challenges the propriety of the sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, and JERRY L. SMITH, JJ., joined.

B. Jeffery Harmon, Assistant Public Defender, Jasper, Tennessee, for the appellant, Marian Esther Cox.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; James Michael Taylor, District Attorney General; and James William Pope, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. **Procedural Background**

The March 1998 session of the Bledsoe County Grand Jury indicted the Defendant, Marian Esther Cox, for the offense of aggravated arson, a Class A felony. The indictment alleged that the Defendant unlawfully and knowingly set fire to Apartment 147 at Pikeville Townhouse Apartments on December 8, 1997. The record contains a copy of a general sessions warrant from Bledsoe County in which the affiant, Robert Watson, asserts that "on Dec. 8, 1997 in Pikeville, TN, at Pikeville Townhouse Apartments No. 147, Marian Esther Cox did use a match & set fire to a bed sheet that was hanging inside the stairway, which set the apt. on fire. This was around 12:30 to 1:00 p.m. in Bledsoe, Co." From the testimony presented at the Defendant's sentencing hearing in April,

2002, it appears that after being arraigned on the aggravated arson charge in the Bledsoe County General Session's Court, the Defendant traveled to St. Louis, Missouri, and did not return to Tennessee until June 2001, when she executed a "waiver of extradition" document. Subsequently, the Circuit Court for Bledsoe County appointed counsel for the Defendant, and the Defendant was evaluated by Johnson Mental Health Inc., in Chattanooga, Tennessee. The evaluation indicated that the Defendant was competent to participate in her defense and that a defense of insanity "cannot be supported."

On January 30, 2002, pursuant to a plea agreement, the Defendant entered a "best interest"[1] guilty plea to arson, a lesser-included offense of the indicted charge of aggravated arson. Arson is a Class C felony. See Tenn. Code Ann. § 39-14-301. The plea agreement provided that the trial court would sentence the Defendant following a sentencing hearing. On April 5, 2002, the trial court conducted a sentencing hearing and imposed a split confinement sentence of four years, with one year to be served in the Bledsoe County Jail followed by three years of probation. This appeal ensued, in which the Defendant argues that the trial court improperly sentenced the Defendant, specifically challenging the one-year term of incarceration.

## II. Sentencing Hearing

At the sentencing hearing, the trial court heard the testimony of Patricia Johnson, the manager of the Pikeville Townhouses in Bledsoe County, Tennessee, and the testimony of the Defendant. The trial court also reviewed and considered the pre-sentence report. Johnson testified that there are seventy apartments in the apartment complex. It was determined that the Defendant's apartment was on fire, and Johnson testified that the damage to the apartment was in the amount of $15,000. She stated that at the time of the fire, she saw the Defendant come out of another apartment that was not the one that was burning. Johnson testified that the Defendant's apartment was connected to seven other apartments, all of which were occupied by families. Johnson reported that a newborn baby resided with a family "two apartments down" from the Defendant's apartment. She indicated that the fire occurred during the daytime and that residents were evacuated, but none were injured. Johnson reported that the Defendant lived alone.

The Defendant, Marian Esther Cox, testified that she is a resident of St. Louis, Missouri, and traveled to Tennessee for the sentencing hearing with her finance, Terry Turner. The Defendant testified that at the time of the fire, she was "going through a bad situation." She explained that on the day of the fire she had an altercation with a woman named Jackie Brock, a girlfriend of her ex-husband, and that Brock "came up there with a threatening letter." The Defendant indicated that she became mad and set the fire. The Defendant admitted that she has had drug and alcohol problems in the past. She reported that she had begun a program for drug and alcohol abuse, and the program included GED classes and counseling. She indicated that the program began about three years prior to the sentencing hearing. The Defendant testified that she receives a social security disability check that she believed to be in the amount of $490 a month. The Defendant indicated that she is seeing

---

[1]See generally North Carolina v. Alford, 400 U.S. 25 (1970).

a drug and alcohol counselor once a week and a psychiatrist once a month. She testified that she had been prescribed Zoloft, Zyprexa, Prozac, and Tregatol and that she was taking those medications.

The Defendant testified that she was having problems with her ex-husband at the time that she committed the arson. She testified that her ex-husband was abusive to her. She claimed that in March of 1999, the Bledsoe County Sheriff's Department told her that there was no warrant for her arrest, and therefore she did not return to Bledsoe County. The Defendant testified that she agreed to come back to Bledsoe County when three police officers came to her house in St. Louis to arrest her for the aggravated arson charge in Tennessee.

On cross-examination, the Defendant stated that she had had one job in her life which lasted from "98 to 99," and which consisted of working farm labor on her brother's hog farm in Missouri. The Defendant admitted that in the past she had "huffed" paint, used marijuana, used cocaine, and spent time in a mental hospital. In response to questioning by the trial court, the Defendant admitted that she had spent several years making a living as a prostitute.

## III. Analysis

The Defendant argues that the trial court erred by including one year of her incarceration as part of its sentence. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of

recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114.

> The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

The weight given to each enhancement or mitigating factor is within the discretion of the trial court, provided that the trial court has complied with the purposes and principles of the Sentencing Act and provided that its findings are supported by the record. Because the record in this case indicates that the trial court erroneously applied two enhancement factors, our review is purely de novo.

In sentencing the Defendant, the trial court applied four enhancement factors: (1)[2] that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1) (1997); (2) that "[t]he offense involved more than one (1) victim," id. § 40-35-114(3) (1997); (3) that "a victim of the offense was particularly vulnerable because of age or physical or mental disability, . . ." id. § 40-35-114(4) (1997); and (4) that "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great," id. § 40-35-114(16) (1997).

The State concedes on appeal that Tennessee Code Annotated § 40-35-114(3) and (4) are both inapplicable to this case. Although the testimony at the sentencing hearing indicated that there were numerous residents of the apartment complex and that many were present at the time of the fire,

---

[2]At the time of the sentencing hearing, there were twenty-two statutory enhancement factors listed in Tennessee Code Annotated section 40-35-114. Subsequently, in Public Acts 2002, ch. 849, § 2, the legislature added a twenty-third enhancement factor, but listed it as enhancement factor (1) and renumbered previous factors (1) through (22) as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). In this opinion, we will refer to the enhancement factors of Tennessee Code Annotated section 40-35-114 as they existed at the time of the sentencing hearing.

including at least one newborn baby who would clearly be "vulnerable," the State points out that no person other than the owner of the single apartment damaged was technically a "victim." As the State points out in its brief, a panel of this Court in <u>State v. Raines</u>, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994), determined "that the word 'victim,' as used in Tennessee Code Annotated § 40-35-114(3), is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." Because the apartment complex where the arson occurred was evacuated with no injuries and no property loss other than to the owner of the apartment, the owner of the apartment is the only victim and there is no evidence that the apartment owner was particularly vulnerable. Thus, we conclude that the trial court erred by applying enhancement factor (3), that the offense involved more than one victim, and enhancement factor (4), that a victim was particularly vulnerable.

However, in this case, the record amply supports the application of enhancement factors (1) and (16). The Defendant admitted that she has a previous history of criminal behavior. In addition, considering the numerous occupants of the apartment building who were put at risk as a result of the arson committed by the Defendant, the arson was clearly committed under circumstances in which the potential for bodily injury to a victim was great.

> With regard to mitigating factors, the trial court stated as follows:
> Now the - - there is a apparently an indication of mental and physical reduction maybe in culpability because of, you know, of what the record appears to show that she has mental difficulties and as a result of both abuse and maybe just her - - plain old heredity Bipolar is not an abuse factor. As far as I know that's something that's just physical really, it's a physical and mental limitation that you inherit, so anyway if she has those things it's not completely clear from this record that she does but they submit that she does. Obviously there's been some problems here, so she should get some - - some reduction I guess, off the sentence for the fact that she has had these hard times and so forth. So all of that is taken into consideration and I will give her a four year sentence.

In our view, the trial court accurately assessed and applied the mitigating factors that were appropriate under the facts of this case.

The trial court applied four enhancement factors to increase the Defendant's sentence from the presumed minimum of three years to the maximum of six years, and then reduced the length of the sentence from six years to four years based on the aforementioned mitigating factors. Although we determined that two of the enhancement factors were inapplicable to this case, we have concluded that the result reached by the trial court is appropriate in light of the two applicable enhancing factors and the weight appropriately afforded to them by the trial court. Additionally, because split confinement is an alternative sentence, the trial court afforded the Defendant the presumption that she is a favorable candidate for alternative sentencing and imposed an alternative sentence. As the State points out in its brief, the Defendant's "real complaint is that she was not given full probation."

With certain exceptions, a defendant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a). "Although probation 'must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law.'" State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997) (citing Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant has the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), a sentence which includes some period of confinement may be appropriate if

      (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
      (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
      (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated § 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated §§ 40-35-113 and 114 as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

In considering full probation for the Defendant, the trial court made the following observation:

Now the question on this is what - - how she should serve that, whether she should just serve it in the penitentiary or go on probation. The primary problem in this case would have to be or sentencing consideration for incarceration would be B under 40-35-103, that confinement was necessary to avoid depreciating the seriousness of the offense. Setting fire to a dwelling with multiple residences is about as serious an offense as you can get. You know, she has pled to a lesser degree of arson, but the facts are the facts and those who know about the crime would have to consider it very serious. Substantial property damage, substantial risk involved, it's a very serious

offense, and so to put somebody on straight probation after something like that with as little as we have here that would justify anything. I mean, you know, if she had been absolutely perfect her whole life then and not been a prostitute, been a hard worker and everything else this fact would still be pretty darn substantial unless you really thought she was mentally incapable of understanding what she was doing. She's been evaluated for that and found not - - that not to be the case and she seems particularly - - reasonably articulate and so forth here, so I can't see how that could not apply and should not apply that would require some incarceration as a result of this activity.

After carefully reviewing the record, we are convinced that the trial court conscientiously considered the facts and circumstances of the offense and the circumstances of the Defendant, as presented in both the testimony at the sentencing hearing and the pre-sentence report. The trial court carefully crafted a sentence in this case, taking into consideration both the interests of the State and the Defendant. The imposition of an alternative sentence involving split confinement, with one year of confinement followed by three years of probation is, in our view, a proper sentence in this case.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE